Marlee **DREW**, Plaintiff,

v.

**FLAGSHIP FIRST NATIONAL BANK OF TITUSVILLE, Defendant.**

**No. 76–464–Orl–Civ–Y.**

United States District Court, M. D. Florida, Orlando Division.

Dec. 30, 1977.

Joseph Egan, Jr., Orlando, Fla., for plaintiff.

Charles M. Harris, Crofton, Holland, Starling, Harris & Severs, Titusville, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This is an action for statutory damages and attorney fees under the Truth-in-Lending Act, 15 U.S.C. §§ 1601 *et seq.* and Regulation Z, 12 C.F.R. §§ 226.1 *et seq.* The cause is now before the Court for a determination of the merits on the basis of the pretrial briefs and a stipulation of facts.

### I.

### FACTS

On December 22, 1975 the plaintiff, Marlee Drew, purchased a new Datsun automo-

**436**

bile from a retail dealer in Brevard County, Florida. Drew financed the purchase by obtaining a consumer loan from the defendant, Flagship First National Bank of Titusville (Flagship). A form security agreement was executed by both Drew and the dealer and then assigned to Flagship.

Drew ultimately defaulted on her obligations under the security agreement. Flagship consequently obtained possession of the vehicle, sold it, and recovered a default judgment in state court for the deficiency. On November 30, 1976 Drew brought this action, alleging that the Flagship security agreement was in violation of the Act and Regulation Z in a number of respects.

The parties agree that the purchase of the Datsun was a consumer transaction and that Flagship is a creditor within the meaning of 15 U.S.C. § 1602(f). The principal question raised is thus whether the security agreement is in fact in violation of the Act and its implementary regulations.

## II.

### FLAGSHIP'S COMPULSORY COUNTER-CLAIM CONTENTION

As an affirmative defense Flagship contends that Drew's truth-in-lending claim is not properly before the Court because she had an opportunity to assert her claim in the state court deficiency action and failed to do so. Flagship contends, in essence, that Drew's truth-in-lending claim was a compulsory counterclaim to the state court action and her failure to prosecute that claim forecloses forever her right to redress under the Act.

It is conceded that this is a novel proposition and neither party has found any authority remotely supportive of it. Certainly Section 1640(e) of Title 15, which vests jurisdiction of civil enforcement actions in the federal courts "or in any other court of competent jurisdiction" offers no support for this contention. Indeed that section, when viewed in light of the statutory scheme and purposes of the Act suggests a contrary conclusion.

It is clear that Congress vested individual borrowers, like the plaintiff here, with the authority to bring suit for statutory damages against offending creditors in order to enforce the broad purpose of meaningful credit disclosure. See *Mourning v. Family Publications Service*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The private litigant having a meritorious claim, under this section of the Act, occupies the role of a "private attorney general". *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666 (E.D. Ky.1974); *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270 (S.D.N.Y. 1971). In most instances he may enforce the provisions of the Act regardless of the good faith of the lender, the reasonableness of the lender's conduct and even of the liability under state law for the underlying obligation. The debtor-plaintiff is afforded this right not to avenge some personal wrong at the hands of the lender but to enforce the federal policies behind the Act. *Porter v. Household Finance Corp. of Columbus*, 385 F.Supp. 336 (S.D.Ohio 1974).

■ It would seem anomalous, in view of the federal policies sought to be enforced, to hold that an enforcement action must be pursued, if at all, by the debtor in the state court in the event that suit is brought on the underlying obligation. If Congress had intended to put the debtor to this choice while at the same time vesting him with such a policy enforcement role it would have so provided.

■ But even if resort is not had to the scheme and purposes of the Act Flagship's contention must be rejected. For an analysis of the state debt and truth-in-lending actions reveals that despite surface similarities these two claims are quite distinct. Hence there is no basis for holding that under Florida law a right of action under the Act must be asserted as a compulsory counterclaim if an action on the underlying indebtedness is brought.

The only significant link between the two claims which could lead to the conclusion that they concern a common "transaction or occurrence" is the credit extension; each sues as a consequence of the other's obliga-

tions on the note. *Roberts v. National School of Radio & Television Broadcasting*, 374 F.Supp. 1266, 1270–1271 (N.D.Ga.1974). The lender's claim is for the balance of the note. The debtor's claim is to remedy alleged violations of the Act as a consequence of the lender's failure to make the appropriate credit disclosures. As one district court has noted in a slightly different context:

> . . . the federal claim [and the state debt] counterclaim do not stand on common ground when realistically assessed; the critical legal inquiry into each "half" of the controversy is so distinct that the parties' disputes are actually fragmented whether pursued through two actions or as separate aspects of one." *Ball v. Connecticut Bank & Trust Co.*, D.C., 404 F.Supp. 1, 4 (1975).

The Court therefore concludes that plaintiff Drew is not estopped by her failure to prosecute her truth-in-lending claim in the state court.

### III.

#### THE PLAINTIFF'S CLAIMS

Four separate violations of the Act and Regulation Z are alleged in the pretrial stipulation and plaintiff's brief. The Court will consider each allegation separately below.

#### A. FLAGSHIP'S DESCRIPTION OF THE TYPE OF SECURITY INTEREST ACQUIRED

Section 1639(a)(8) of the Act provides in part that the lender must set forth "[a] description of any security interest held or to be retained or acquired by [it] in connection with the extension of credit . .". The Federal Reserve Board has implemented this provision of the Act in Section 226.-8(b)(5) of Regulation Z, which provides, in part, that the lender must describe or identify the "type of any security interest held or to be retained or acquired . . . and a clear identification of the property to which the security interest relates . .".

Drew argues that the Flagship security agreement at issue here fails to measure up to the standards required by the Act and the regulation. The challenged provision is as follows:

> "Until all installments and all other sums payable hereunder have been fully paid seller has and shall retain *title* to and a *security interest* in the property." (emphasis supplied)

The term "title", Drew reasons, is misleading under Florida law because the seller does not in fact retain title. And the only other language which might "describe or identify" the type of security interest, she notes, is the term "security interest" itself. It thus follows that the security agreement inadequately describes the *type* of security interest acquired by Flagship. To hold otherwise, Drew contends, would be to render the language of Section 226.8(b)(5) a complete nullity.

The Court disagrees. This analysis attaches too much importance to the use of the language "type of security interest" in the regulation. Drew would apparently require that the lender attach some descriptive terminology to the particular form of his security interest—such as "chattel mortgage", "deed of trust", etc. The Federal Reserve Board staff has itself rejected such a contention.

> "Staff believes that this provision of the regulation does not require creditors to provide a detailed statement of the type of interest acquired or a citation to any specific statutory provision pursuant to which the security interest is obtained." F.R.B. Official Staff Interpretation letter of November 22, 1976, 1976 CCH Cons. Cred. Guide ¶ 31,491.

In a recent case the Fifth Circuit laid to rest any question about whether the regulation required this kind of specificity by the lender. *Anthony v. Community Loan & Inv. Corp.*, 559 F.2d 1363 (5th Cir. 1977). There the security agreement and note provided that the "Debtor grants a security interest to the Secured Party in the following described personal property . . . .". 559 F.2d at 1367. The Court noted that the

Uniform Commercial Code now provides a universal definition of the term "security interest". *See* Fla.Stat. § 671.1–201(37). The Code was designed to replace the numerous security devices which were so confusing in the pre-Code commercial practice. Accordingly, noted the Court, it would be anomalous (and indeed counter-productive) to read the regulation as requiring the lender to specify the particular security device employed. It was sufficient, the Court concluded, that the agreement contained a reference to a security interest that was enforceable under the Uniform Commercial Code.

■ The security agreement at issue here differs little from the one upheld in *Anthony* except that it contains no express reference to the creditor's remedies under the Code upon default, and there is little reason to construe the regulation as requiring such an express reference. As long as the "security interest" is in personal property described in the agreement, and thus within the Uniform Commercial Code, it would seem adequate simply to disclose that a security interest is involved. Two district court decisions and a noted commentator have so concluded. *Houston v. Atlanta Fed. Savings & Loan Assn.*, 4 CCH Consumer Credit Guide ¶ 98,553 (N.D.Ga.1975); *McKenney v. Greenbriar Lincoln-Mercury, Inc.*, 4 CCH Consumer Credit Guide ¶ 98,552 (N.D.Ga.1975). I. R. Clontz, Jr., Truth-In-Lending Manual ¶ 6.01[8] (4th Ed. 1976). The Court therefore concludes that the Flagship security agreement adequately described the type of security interest acquired.

## B. THE USE OF THE TERM "TITLE" IN THE SECURITY AGREEMENT

Drew contends that even if the "security interest" language complies with the requirements of Section 226.8(b)(5) of the regulation, the language is nevertheless misleading and ·in violation of Section 226.6 because it states that the "seller has and shall retain *title to* and a security interest in the property." (emphasis added) Unquestionably the use of that language was unnecessary, for under the Uniform Commercial Code "title" is irrelevant to the creation and perfection of a security interest. Fla.Stat. Sections 679.9–102; 679.9–302(3). But it is nevertheless difficult to accept the contention that the reference to the seller's retention of title rendered the required disclosure misleading or confusing.

■ The instrument clearly apprises the debtor of the crucial fact that a security interest under Florida law has been acquired in the vehicle. The additional statement that the secured party has "title" seems to be harmlessly superfluous since it is of no importance to the security interest retained. Moreover, under Florida law title to a financed automobile is essentially a fiction; the debtor may have the title in legal contemplation but until the loan is satisfied it is the lender who retains possession of the certificate of title. *See Fla.Stat.* Ch. 319. In this sense the lender does in fact retain the "title".

## C. THE "FUTURE INDEBTEDNESS" CLAUSE

Drew finds a third violation of the Act and Regulation in the "future indebtedness" clause of the Flagship Security Agreement, which provides as follows:

"The security interest granted hereby shall also secure any and all other or future indebtedness and obligations of Buyer to seller or seller's assignee of this contract."

Drew contends that this provision is not in compliance with the disclosure requirements of Section 226.8(b)(5) and is, as a result, misleading in violation of Section 226.8.

■ The Court finds no merit to this contention. The disclosure requirement of Section 226.8(b)(5) simply states that " . . . if other or future indebtedness is or may be secured by any such property, *this fact* shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired" (emphasis added). The meaning of this language is too plain to

be subject to legitimate disagreement. The regulation merely requires notification of the *fact* that other or future indebtedness is or may be secured by the collateral. The Flagship Security Agreement plainly complies with this requirement. Indeed the language used is substantially in conformance with the language suggested by the Federal Reserve Board itself in the forms contained in the *Regulation Z Pamphlet. See I. R. Clontz, Jr., Truth-In-Lending Manual* Para. 6.01(8) at 6–43 (4th Ed. 1976). Drew's contention that *Pollock v. General Finance Corp.,* 535 F.2d 295 (5th Cir. 1976) somehow requires additional disclosure is without merit.

**D.** *FLAGSHIP'S COMPLIANCE WITH REGULATION Z SECTION 226.8(c)(5)*

Section 226.8(c)(5) lists a number of terms which *must* be used in itemizing the total cost to the consumer of a credit sale. The regulation provides, in pertinent part, as follows:

> "In the case of a credit sale . . . the following items, *as applicable,* shall be disclosed:
> (5) the sum of the amounts deferred under subparagraphs (3) and (4) . . . using the term '*unpaid balance*'.
> (6) any amounts required to be deducted under paragraph (e) of this section using, as applicable, the terms "prepaid finance charge" and "required deposit balance", and, if both are applicable, the total of such items using the term 'total prepaid finance charge and required deposit balance'.
> (7) the difference between the amounts determined under subparagraphs (5) and (6) . . . using the term '*amount financed*'." (emphasis added)

Drew contends that Flagship has violated this section because the security agreement contains not only the term "unpaid balance", as required by Section 226.-8(c)(5), at the appropriate place, but also the term "amount financed". There is no merit to this contention.

A copy of the first page of the security agreement [in pertinent part] is attached as an appendix to this opinion and as can readily be seen the addition of the term "amount financed" is not the slightest bit misleading. To the contrary, it adds to the debtor's knowledge and is thus completely within the spirit of section 226.6(c)—which permits additional information helpful to the consumer. The term "amount financed" (as noted in the above quoted portion of the regulation) is designed to inform the consumer of the difference between the unpaid balance and the finance deposit or other charges payable separately and required to be disclosed under Section 226.-8(e). There were no such additional finance or deposit charges in Drew's case and the security agreement therefore properly omits any such disclosure. And because that disclosure is omitted, the term "amount financed" used in conjunction with "unpaid balance" is completely accurate and informative. For it tells the consumer that the amount indicated ($2,905.40) is the balance of the purchase price that he owes on the car (after being given credit for his down payment), and that he is financing that balance through Flagship Bank.

## CONCLUSION

The Court finds no merit to the contention that the Flagship Security Agreement is in violation of Regulation Z of the Act. Accordingly, judgment will be entered in favor of the defendant.

DONE in Chambers at Orlando, Florida, this 30th day of December, 1977.

Appendix to follow.

# APPENDIX

Contract Number ℱ:637967

## FLAGSHIP FIRST NATIONAL BANK OF TITUSVILLE
### TITUSVILLE, FLORIDA
## SECURITY AGREEMENT—RETAIL INSTALMENT CONTRACT ORIGINAL
### MOTOR VEHICLE SALES

The undersigned Seller hereby sells, and the undersigned Buyer or Buyers, jointly and severally, hereby purchase(s), subject to the terms and conditions hereinafter set forth, the following property (which, together with any and all replacements thereof and additions thereto, is herein called the "property"), delivery and acceptance of which in good order are hereby acknowledged by Buyer, viz:

| New or Used | Year Model | No. Cyl. | Make Trade Name | Body Type If Truck, Give Tonnage | Model Number or Series | Manufacturer's Serial No. | Motor No. |
|---|---|---|---|---|---|---|---|
| New | 76 | 4 | Datsun | 2dr. | HLB210 | HLB210-730254 | 211357 |

EXTRA EQUIPMENT: (Check or describe items included) Other: Undercoat & rustproofing

Automatic Transmission ☐   Power Steering ☐   Power Brakes ☐   Radio ☐   Heater ☐   Air Conditioner ☐

CASH PRICE (including accessories or extras, if any, and taxes imposed on the cash sale) ............................ $ 3350.50 (1)

TOTAL DOWNPAYMENT, consisting of: Trade in (Net) $ None _____ Cash Downpayment $ 450.50 ..... $ 450.50 (2)

Description of: Trade-in. Make _____ Model _____ Year _____

UNPAID BALANCE OF CASH PRICE (difference between items 1 and 2) . ............................ $ 2900.00 (3)
OTHER CHARGES (include only if financed under this contract):
   A. Accidental Physical Damage Insurance ............................ $ None (4)

   Comprehensive Coverage  including $ _____ Deductible
          excluding
   Fire-Theft and Additional Coverage  including $ _____ Deductible
          Excluding

The PROPERTY INSURANCE, if written in connection with this loan, may be obtained by buyer through any person of his choice. If buyer desires such insurance to be obtained from or through Seller, the cost will be as provided herein for a term of _____ months.
NOTE: Liability insurance coverage for bodily injury and property damage caused to others is not included.
   B. Credit Life and Credit Life Insurance & Disability Insurance, are Voluntary and Not Required for Credit. Such insurance coverage is available at the cost designated below for the term of the credit:
   CHECK APPLICABLE BOX: ☐ Credit Life insurance is desired  ☐ Credit Life & Disability Insurance is desired  ☒ No Credit Life Ins. or Credit Life Disability Insurance is desired.

Insured Signs _____ Date: 12-22-75 Age: _____ Credit Life: $ None

Insured Signs _____, Date: _____, Age: _____ Disability: $ None
   C. Documentary Stamps ............................ $ 5.40
   D. State Sales Tax ............................ $ None
   E. License ............................ $ None
   F. Certificate of Title Fee $ _____, Title Lien Fee $ _____, Registration Fee $ _____ Total $ None
UNPAID BALANCE — AMOUNT FINANCED (add items 3 and 4) ............................ $ 2905.40 (5)
FINANCE CHARGE, consisting only of interest ............................ $ 610.00 (6)
TOTAL OF PAYMENTS (add items 5 and 6) ............................ $ 3515.40 (7)
DEFERRED PAYMENT PRICE (add items 1, 4 and 6) ............................ $ 3965.90 (8)
ANNUAL PERCENTAGE RATE ............................ 12.82 % (9)

PAYMENT SCHEDULES
Buyer agrees to pay the TOTAL OF PAYMENTS to the Seller (or, If the Seller has assigned this contract, then to the assignee of this contract) at the office of
FLAGSHIP FIRST NATIONAL BANK OF TITUSVILLE, FLORIDA
36 no. _____ instalments of $ 97.65 each, commencing Feb. 4 19 76, and on the same day of each successive month thereafter, indicated in space below, together with a BALLOON PAYMENT in the amount of $ None , due on _____, 19 ____.