Ramon MARTINEZ and Maria
Martinez, Plaintiffs,

v.

IDAHO FIRST NATIONAL BANK, a
national banking association,
Defendant.

Civ. No. 79–1104.

United States District Court,
D. Idaho.

Feb. 11, 1981.

774

Mary Gibson-Glass, Idaho Legal Aid Services, Inc., Migrant Farmworkers Law Unit, Caldwell, Idaho, for plaintiffs.

Larry E. Prince and John C. Ward, Langroise, Sullivan & Smylie, Boise, Idaho, for defendant.

## MEMORANDUM DECISION

CALLISTER, District Judge.

## I. INTRODUCTION

This action arises out of a consumer credit transaction. On May 23, 1978, plaintiffs Martinez entered into a credit transaction with defendant Idaho First National Bank in order to refinance a 1973 Datsun which plaintiffs were buying from West Park Toyota in Ontario, Oregon. The transaction is evidenced by the defendant lender's Sale and Loan Agreement. The plaintiffs subsequently filed suit alleging several violations of the Truth in Lending Act, 15 U.S.C. § 1601, et seq., and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.1, et seq., which implements the Act. This Court's jurisdiction is invoked pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337.

The plaintiffs have now moved for summary judgment, contending that the defendant has violated the Truth in Lending Act (hereinafter "TILA") as a matter of law in the following respects:

1. By failing to place the signature lines following the full content of the document and by failing to properly direct the consumers' attention to both sides of the document in violation of Regulation Z, 12 C.F.R. § 226.8(a) and Official Federal Reserve Board Interpretation § 226.801.

2. By failing to disclose the amount or the method of computing the amount, of any default, delinquency, or similar charges in the event of late payments in violation of Regulation Z, 12 C.F.R. § 226.8(b)(4).

3. By failing to disclose a security interest in the insurance proceeds in violation of Regulation Z, 12 C.F.R. § 226.8(b)(5).

4. By failing to disclose that defendant's security interest in the plaintiffs' automobile could be used to secure "future indebtedness," namely additions to the loan balance of expenditures for taxes and insurance in violation of Regulation Z, 12 C.F.R. § 226.8(b)(5).

5. By failing to disclose the method used to determine how much of the finance charge would be rebated in the event of prepayment in violation of Regulation Z, 12 C.F.R. § 226.8(b)(7).

6. By making disclosures not required under TILA which detracted from the disclosures which are required by TILA in violation of Regulation Z, § 226.6(c).

7. By failing to make the terms "annual percentage rate" and "finance charge" more conspicuous than the other required disclosures in violation of Regulation Z, § 226.6(a).

8. By failing to adequately disclose its identity to the plaintiffs, in violation of Regulation Z, 12 C.F.R. § 226.8(a).

9. By failing to adequately disclose the type of security interest held in plaintiffs' automobile in violation of Regulation Z, § 226.8(b)(5).

The defendant has likewise filed a motion for summary judgment.

## II. DISCUSSION

The alleged violations numbered 1, 3, 6, 7 and 8, above, were discussed at some length in a prior opinion of this Court which dealt with a loan form identical to the one at issue here, *Dixey v. Idaho First National Bank*, 505 F.Supp. 846.[1] Therefore, the opinion in *Dixey*, insofar as it relates to the above-mentioned allegations, is adopted as

1. In that action, the plaintiff's motion for summary judgment was denied, and summary judgment was entered in favor of the non-moving party, the bank.

controlling in the instant case.[2] Nevertheless, the plaintiffs have identified and briefed four issues which did not surface in *Dixey* and merit this Court's consideration.

A. *Failure to Adequately Describe the Security Interest in the Collateral—§ 226.8(b)(5):*

■ Regulation Z, § 226.8(b)(5), provides that the disclosure statement must contain:

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates....

Plaintiffs note that two separate requirements are stated in this section: (1) the property must be clearly identified, and (2) the security interest must be described. The plaintiffs concede that the defendant has satisfied the first requirement, but argue that it has failed to satisfy the second requirement.

The disclosure statement contains the provision: "As collateral for this loan, I give you a security interest (legal claim) in the merchandise I'm buying." Plaintiffs observe that several types of security interests are listed under the definition of the term "security interest" in 12 C.F.R. § 226.-2(gg). It is their contention that the lender must describe with some particularity the *type* of security interest held, whether it be a purchase money security interest or materialman's lien. The only authority cited by plaintiffs in support of the contention is *McDonald v. Savoy*, 501 S.W.2d 400 (Tex. Civ.App.1973). The defendant in *McDonald* had used a form which stated that "Seller is reserving a security interest in the above vehicle to secure this and any other debt Buyer may owe Seller or any subsequent

Holder." The court determined that a mere recital that "a security interest" is being retained falls short of satisfying the requirement that the security interest be described. However, the authority of *McDonald* has been severely impaired by the decision of the Texas Supreme Court in *Holmes v. O. C. Olson*, 587 S.W.2d 678 (Tex. 1979). *Holmes* dealt with the following provision:

To secure payment of the foregoing obligation or any renewal of same, and to likewise secure payment of any other indebtedness now or hereafter owed lender by borrower, borrower hereby grants to lender a security interest, subject to the terms and conditions stated on reverse side hereof, in the personal property described hereinafter, together with any and all additions thereto and to all proceeds therefrom, all hereinafter collectively called "Collateral."

The trial court held that the quoted description did not satisfy the requirements of 15 U.S.C. § 1639(a)(8) and 12 C.F.R. § 226.-8(b)(5). The Court of Civil Appeals reversed this determination, *O. C. Olson v. Holmes*, 571 S.W.2d 211 (Tex.Civ.App.1978), citing a post-*McDonald* decision by the Fifth Circuit, *Grant v. Imperial Motors*, 539 F.2d 506 (5th Cir. 1976). The Texas Supreme Court sided with the Court of Civil Appeals: "We agree with the Court of Civil Appeals and disapprove the opinion in *McDonald v. Savoy* to the extent it conflicts with *Grant v. Imperial Motors*, and the present opinion of the Austin Court of Civil Appeals." 587 S.W.2d at 679.

The argument advanced by plaintiffs has been rejected by other courts which have been called upon to pass on the issue. In *Houston v. Atlanta Fed. Sav. and Loan Ass'n*, Cons.Cred.Guide (CCH) ¶ 98,553 (N.D.Ga. March 25, 1975), the security inter-

---

2. With respect to alleged violation number three, plaintiffs have cited one opinion not cited by the plaintiff in *Dixey, Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437 (3rd Cir. 1977). While *Gennuso* appears to support plaintiffs' position, the decisions respecting that issue are far from uniform, and this Court finds the decision in *Rounds v. Community*

*Nat'l Bank in Monmouth*, 454 F.Supp. 883 (S.D. Ill.1978) to be the better-reasoned opinion. In addition, at least two commentaries have criticized the holding in *Gennuso*, 1 R. Clontz, Jr., *Truth-In-Lending Manual*, ¶ 6.01[7] (4th ed. Supp. 1980); Edmonds and Taylor, *Truth and Consequences*, 35 Wash. & Lee L.Rev. 367 (1978).

est in a loan transaction was described as a "deed to secure debt." The borrower maintained that the description was inadequate and violative of TILA since it failed to state that it was a *first* deed. The Special Master rejected this assertion. Likewise, in *Ramsey v. American Fin. Sys. of Atlanta, Inc.*, Cons.Cred.Guide (CCH) ¶ 98,510 (N.D.Ga. March 25, 1975), a borrower contended that the type of security interest retained was not identified or described. The Court noted that TILA requires a description of the security interest; Regulation Z added the words "or identification of the type." Thus, the choice is not a description or identification of the *type* of interest. The court refused to require a return to the technical jargon of security interests. Finally, the decision in *Drew v. Flagship First Nat'l Bank of Titusville*, 448 F.Supp. 434 (M.D.Fla.1977) is most instructive. The challenged provision in *Drew* read as follows:

> Until all installments and all other sums payable hereunder have been fully paid seller has and shall retain title to and a security interest in the property.

The plaintiff argued that disclosure failed to pass muster under TILA. The court disagreed, saying

> [T]his analysis attaches too much importance to the use of the language "type of security interest" in the regulation. Drew would apparently require that the lender attach some descriptive terminology to the particular form of his security interest—such as "chattel mortgage", "deed of trust", etc. The Federal Reserve Board staff has itself rejected such a contention.
>
> "Staff believes that this provision of the regulation does not require creditors to provide a detailed statement of the type of interest acquired or a citation to any specific statutory provision pursuant to which the security interest is obtained." F.R.B. Official Staff Interpretation letter of November 22, 1976, 1976 CCH Cons.Cred.Guide ¶ 31,491.

448 F.Supp. at 437.

The court observed that the Uniform Commercial Code now provides a universal definition of the term "security interest," and was designed to replace the numerous security devices which were so confusing in pre-Code commercial practice. Hence, it would be anomalous (if not counterproductive) to read the regulation as requiring the lender to specify the particular security device employed. The court came to this conclusion:

> As long as the "security interest" is in personal property described in the agreement, and thus within the Uniform Commercial Code, it would seem adequate simply to disclose that a security interest is involved.

*Id.* at 438.

A noted commentator on the TILA has reached the same conclusion. 1 R. Clontz, Jr., *Truth-In-Lending Manual*, ¶ 6.01[8] (4th ed. 1976).

Clearly, the interpretation advanced by plaintiffs flies in the face of the weight of authority and of common sense. While a consumer may care a great deal about the accuracy with which the property subject to the security interest is described, it is highly doubtful that a description of the *type* of security interest will signify anything to the vast majority of consumers. The Court does not believe that an identification of the specific variety of interest held will contribute toward the statutory goal of promoting a meaningful disclosure of credit terms, 15 U.S.C. § 1601; rather, it is more likely to lead to "informational overload," *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 568, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980). Consequently, the Court concludes that the defendant is entitled to judgment as a matter of law as to this issue.

B. *Failure to Disclose the Amount, or Method of Computing the Amount of a Default Charge—§ 226.8(b)(4):*

■ It is required in 12 C.F.R. § 226.-8(b)(4) that the creditor disclose "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late

payments." The plaintiffs contend that this provision has been violated since the only disclosure made by the defendant concerning any late charges or additional interest due upon late payment is the statement: "If I pay late, it [the finance charge] will be more." No mention is made, continue the plaintiffs, of how much more the finance charge will be, or how the extra amount of the finance charge is computed, or whether any late or collection charges would be assessed in the event of late payments. The defendant counters by denying that it imposes any default or delinquency charge. Its Sale and Loan Agreement, unlike many, does not impose a set charge for late payments, or assess a fee equal to a percentage of the outstanding balance. Since the loan is a simple interest loan, the only effect of a late payment would be to increase the finance charge, which is computed daily on the outstanding balance. This, defendant declares, does not constitute a default charge within the meaning of TILA. Federal Reserve Board Official Staff Interpretation FC–0083 (June 20, 1977) offers support for defendant's position:

This will respond to your letter of . . . . You request an official staff interpretation of Regulation Z as to whether or not the accrual of simple interest on the unpaid principal balance of a closed end credit transaction beyond the date on which an instalment is due is a "default, delinquency, or similar charge payable in the event of late payment" for purposes of § 226.8(b)(4).

In such transactions, the finance charge (or the interest component of the finance charge) is determined by application of a periodic rate (daily, monthly, or annual) to the unpaid principal balance for the actual period that the balance has been outstanding. As you note, the finance charge and annual percentage rate that are initially disclosed are computed on the basis of periodic instalment payments that will be payable by the borrower on certain dates or at fixed intervals.

If these periodic instalments are made as scheduled, the interest that accrues on the decreasing principal balance will correspond to the finance charge (or the interest component of the finance charge) initially disclosed to the borrower. However, the finance charge (or the interest component of the finance charge) will vary from that initially disclosed if payments are received on other than the scheduled dates. A payment that is made by the borrower after its due date will result in the accrual of more interest, just as an instalment made in advance of its due date will result in the accrual of less interest. As to successive payment cycles, interest accrues from the date of the immediately preceding payment.

It is staff's opinion that, in the situation you describe, the continued accrual of interest beyond the date on which an instalment is due does not constitute a "default, delinquency, or similar charge payable in the event of late payment" for purposes of § 226.8(b)(4). If a creditor imposes a late payment charge in addition to the accrual of simple interest, such charges are, of course, subject to disclosure under § 226.8(b)(4).

To the same effect is Federal Reserve Board Unofficial Staff Interpretation No. 1099 (Aug. 10, 1976).[3] The plaintiff in *Fisher v. Beneficial Finance Co. of Hoxsie*, 383 F.Supp. 895 (D.R.I.1974) made the same contention offered by plaintiffs in the instant action—that additional charges, which included only additional interest at the agreed upon rate, amounted to "default, delinquency, or similar charges payable in the event of late payment." The Court found the contention to be without merit. Neither 15 U.S.C. § 1639(a)(7) nor Section 226.8(b)(4) of Regulation Z requires disclosure whenever the cost of credit is increased by reason of late payments. The additional interest charged at the contractual rate, in the event of a late payment, falls within the finance charges

---

**3.** The Supreme Court has indicated that "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act

or Regulation should be dispositive . . . ." *Ford Motor Credit Co. v. Milhollin, supra*, 444 U.S. at 565, 100 S.Ct. at 797.

and does not constitute a default, delinquency, or similar charge.

A default or delinquency charge carries with it the inference that something is being charged to the borrower in addition to the regular payments required under such loan—a penalty. . . .

If the plaintiff does make her monthly payments when due, she is only required to pay the specified rate of interest on the unpaid balance of the loan to her and nothing more. Plaintiff's contention that "if a payment is even one or two days late the cost of credit is increased" is irrelevant. Section 1639(a)(7) of 15 U.S.C. and Section 226.8(b)(4) of Regulation Z do not purport to require any disclosure whenever the cost of credit is increased by reason of the failure to pay an instalment of a loan when it is due, but do require disclosure only when the increased cost is due to "default, delinquency, or similar charges payable in the event of late payments". Additional interest at the contracted rate when there is a late payment is neither a penalty nor a "default, delinquency or similar charge[s] payable in the event of late payments".

383 F.Supp. at 898–99.

The case law and Federal Reserve Board Staff Interpretations demonstrate that the defendant has not violated 12 C.F.R. § 226.-8(b)(4) and is therefore entitled to judgment as a matter of law.

C. *Failure to Disclose that Future Advances Would be Subject to the Security Interest—§ 226.8(b)(5):*

█ One provision in the Sale and Loan Agreement provides: "You can insure the collateral or pay any tax if I don't. I will then repay you with the highest interest allowed by law. You can add the cost to my remaining balance and increase each payment or require a larger final payment." The plaintiffs assert that by agreeing to pay any tax or insurance obligation which the debtor fails to meet, the lender is effectively making "future advances." That such future indebtedness will be secured by

the collateral must be disclosed under 12 C.F.R. § 226.8(b)(5) which provides, in pertinent part, that

if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

It is highly doubtful that the lender's payment of obligations which the debtor has failed to meet is encompassed within the term "future indebtedness." Federal Reserve Board Public Information Letter No. 344 (June 4, 1970) has addressed this issue. (The issue arose in a mortgage context, but the rationale applies with equal force to the case at bar.) The pertinent portion of the letter states:

The term "future indebtedness" in Section 226.8(b)(5) was not intended to encompass mere additions to the indebtedness as a result of tax payments by the mortgage [sic] if the mortgagor failed to make the required payments. Only further amounts *directly loaned by the mortgagor*, as for example where a security interest in property will secure any other obligations which the debtor may have with the creditor, were intended to be included in the term "future indebtedness." (emphasis added)

Even assuming that the additions to the indebtedness do constitute "future indebtedness," plaintiffs would not be entitled to prevail on this issue. *Matter of Garner*, 556 F.2d 772 (5th Cir. 1977) is the only case cited by plaintiffs in support of their assertion; however, they misconstrue the thrust of the holding in *Garner*. In that case, the bankruptcy judge concluded that the conditional sales contract violated TILA and Regulation Z because the disclosure statement did not call attention to a provision in small type on the reverse side of the document dealing with future indebtedness. The provision stated:

The security interest aforesaid shall, in addition to securing all presently existing debts and liabilities, secure all future advances made by the Seller to or for the

account of the Buyer, including advances for loans, taxes, levies, insurance, repairs to or maintenance of the collateral and all reasonable costs and expenses incurred in the collection of any such indebtedness.

The lender sought to convince the court that disclosure was not required by virtue of 12 C.F.R. § 226.8(j) which says:

Any increase in an existing obligation to reimburse the creditor for undertaking the customer's obligation in perfecting, protecting or preserving the security shall not be considered a new transaction subject to this part.

The Court was not convinced, but it is important to understand why it was not convinced.

Manifestly, however, the dragnet provision in the instant contract reaches well beyond sums spent to protect the collateral. The contract provides that the automobile shall secure

all future advances made by the Seller to or for the account of the Buyer, including advances for loans, taxes, levies, insurance, repairs, to or maintenance of the collateral. . . .

Record at 9 (emphasis added). Thus, we think the provision is drawn too broadly to come within any protection § 228.8(j) might otherwise have provided.

556 F.2d at 778.

The Court made it very clear that its conclusion was based on the lender's failure to draft the provision more narrowly. Had the provision been restricted to advances made to perform obligations of the customer under the contract, no violation should have been found. 1 R. Clontz, supra at ¶ 6.01[7] (Supp.1980). The provision in the instant agreement does not suffer from that defect. Assuming arguendo that the provision amounts to a future indebtedness clause, it refers only to sums paid for taxes and insurance and is drawn sufficiently narrowly to come within the protection of § 226.8(j).

One final fact prevents plaintiffs from prevailing on this issue. Again, assuming that the term "future indebtedness" embraces the lender's right to cover for the

debtor's defaulted obligations and add this amount to the balance, it appears that the defendant has adequately disclosed that these additions to the balance are secured by the collateral. Under the heading "Security Interest," on the front side of the document, the defendant has stated: "The collateral will cover any other loan made to me by you." This disclosure is sufficient under § 226.8(b)(5), since that section merely requires notification of the fact that future indebtedness will be secured by the collateral. Drew v. Flagship First Nat. Bank of Titusville, 448 F.Supp. 434 (M.D. Fla.1977); 1 R. Clontz, supra at ¶ 6.01[8]. The defendant's Sale and Loan Agreement plainly complies with this requirement. Accordingly, defendant is entitled to summary judgment on this issue.

D. Failure to Disclose Method of Determining the Amount of the Finance Charge Which is Rebated Upon Prepayment—§ 226.8(b)(7):

It is required in 12 C.F.R. § 226.8(b)(7) that the following information be disclosed:

[An] identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.

Under the heading "Early Payment," is the statement: "I may prepay what I owe in full or in part anytime. This will reduce the finance charge." Plaintiffs argue that defendant has violated the above-quoted provision because it has failed to disclose the method to be used to determine the reduction of the finance charge upon prepayment.

The applicability of § 226.8(b)(7) depends upon whether the transaction in question is

a simple interest loan or an obligation involving precomputed finance charges. Plaintiffs maintain that the defendant has precomputed the finance charge. They apparently base their argument on the fact that the finance charge has been computed and has been included in the total of payments figure. However, as defendant points out, the loan document, taken as a whole, bears all the indicia of a simple interest loan. Under the heading "Payments I'll Make" the debtor is informed that "a finance charge [will be] figured each day on my daily loan balance." Similarly, under the heading "Simple Interest" is the statement:

The finance charge ... is the actual finance charge I'll pay if I make my first payment 30 days from now and make all other payments on time. If I make payments early, the finance charge may be less. If I pay late, it will be more. You will apply each payment first to the finance charge, next to the principal, and last to any collection charges.

Finally, the section entitled "Early Payments" contains this disclosure:

I may prepay what I owe in full or in part at anytime. This will reduce the finance charge. Regardless of how early I may prepay, there's a minimum charge of $5 if the amount financed is $75 or less and a minimum charge of $7.50 if the amount financed is more than $75.

Title 15 U.S.C. § 1639(a)(4) requires lenders to disclose the amount of the finance charge. This apparently is required regardless of whether the loan is a simple interest loan or is a precomputed finance charge loan. By including the amount of the finance charge in the total of payments, the defendant has merely informed the plaintiffs of the total cost of their simple interest loan assuming no prepayment, and assuming that all loan payments are timely received. However, the inclusion of the finance charge in the total of payments does not mean that the loan is not a simple interest loan, for the agreement clearly states that the finance charge is computed daily on the loan balance. If the consumer prepays a simple interest loan, he simply pays the unpaid balance of the principal plus the interest actually earned through the date of prepayment (plus any prepayment charge). For this reason, § 226.8(b)(7) is inapplicable to a simple interest loan—no rebate of the finance charge occurs since only the interest actually earned is paid by the borrower. This interpretation is confirmed by Federal Reserve Board Public Information Letter No. 991 (Jan. 22, 1976).

This is in response to your letter ... regarding the proper disclosure of the method of computing rebates of unearned finance charges on student loans under Regulation Z.

The disclosures are made on promissory notes which consolidate a series of student loans. Item 7 of the Truth in Lending portion of the note states that the borrower may make full or partial prepayment without penalty and further provides that a rebate of unearned interest will be "computed simple on the unpaid balance." You ask whether this is a sufficient disclosure of the rebate method.

Your question apparently relates to § 226.8(b)(7) of Regulation Z, which requires an identification of the method used to compute rebates of unearned finance charges on obligations involving precomputed finance charges. However, this section would not apply to the type of transaction described in the note, which involves a simple interest loan. Assuming this is a true simple interest loan, there would be no unearned finance charges at the time of prepayment and thus no reason to make any disclosures under § 226.8(b)(7).

Simple interest loans are, however, subject to the disclosure requirements of § 226.8(b)(6), if the creditor imposes any penalty charges for prepayment of the loan. Since this transaction involves no such charge, that section would not be applicable. Disclosure of the fact that *no* penalty is imposed for prepayment is not required, although the Regulation would not prohibit such a disclosure. Thus, we believe that the first sentence of Item 7

may be retained but is not necessary. The second sentence, relating to rebates, should, of course, be deleted since it is inapplicable to this transaction and may be confusing to borrowers.

■ Plaintiffs' loan appears to be a simple interest loan; hence, the requirements of § 226.8(b)(7) are not pertinent.[4] Further, defendant has revealed the minimum penalty charge imposed upon prepayment and has thus satisfied the requirements of § 226.8(b)(6), which deals with simple interest loans. The Court concludes that summary judgment must be entered in defendant's favor regarding the alleged violation under 12 C.F.R. § 226.8(b)(7).

## III. CONCLUSION

■ With regard to the four alleged violations not covered in *Dixey v. Idaho First National Bank*, 505 F.Supp. 846, plaintiffs have clearly failed to prove they are entitled to prevail as a matter of law. As in *Dixey*, however, it appears that in three particulars (see alleged violations numbered 1, 6 and 7) plaintiffs have shown that defendant's form suffers from technical defects. The criticisms levelled at TILA and Regulation Z, and the inequities resulting from a technical application of the Act and Regulation Z, were discussed at some length in the *Dixey* opinion, and need not be repeated here.[5] It is sufficient to note that this Court has adopted the approach taken by Judge Chapman in *Sanders v. Auto Associates*, 450 F.Supp. 900 (D.S.C. 1978). The Court will liberally construe the provisions of TILA and Regulation Z in favor of borrowers who were misled or might have been misled by a confusing or incomplete loan form. However, this Court will construe its provisions *against* borrowers who were not misled by the lender's disclosures, but merely seek a windfall for finding a technical problem with the loan form which could not have conceivably influenced their choice of credit.

In the instant action, there is no indication that the lender has sought to mislead or confuse the customer, or to obscure important disclosures. On the contrary, an examination of defendant's form reveals a sincere effort on the part of the bank to breathe life into TILA. It has attempted to eliminate legalese, and to make disclosures in a manner comprehensible to the average consumer. It bears noting that defendant's form contains the disclosures required by the regulations and case law, and that plaintiffs' objections largely center around the improper size or placement of certain items. Furthermore, there is no indication in the record that the plaintiffs suffered any actual damage or could have been misled or confused by the defects in defendant's loan form. Also missing is any indication that the technical violations in any way influenced plaintiffs' choice of credit. Finally, the Court is not convinced that the technical defects in the form prevented the plaintiffs from making a meaningful comparison of credit terms; hence, it appears that the disclosure statement accomplishes the objectives set out in 15 U.S.C. § 1601(a). For the foregoing reasons, this Court construes the provisions of TILA and Regulation Z against the plaintiffs, and concludes that plaintiffs' motion for summary judgment is not well taken and should be de-

4. Even assuming, for the sake of argument, that the loan is subject to the requirements of § 226.8(b)(7), any defect in defendant's form would be cured by a statement to the effect that finance charge rebates will be based on the Rule of 78's. Only a very few consumers would ever understand a reference to the Rule of 78's without further explanation. *Powers v. Sims and Levin Realtors*, 396 F.Supp. 12, 18 n.5 (E.D.Va.1975). Nevertheless, no explanation is required. Official Federal Reserve Board Interpretation § 226.818. This is simply one more instance where TILA and Regulation Z exalt form over substance. It seems inequitable and foolish to penalize a lending institution for failing to print information on its forms which the vast majority of consumers would not understand.

5. One pair of commentators made an observation which was not mentioned in *Dixey*, but which is worth noting here. "We note that a person might be penalized more heavily for an innocent truth in lending violation than for stealing the entire Total of Payments." Edmonds and Taylor, *Truth and Consequences*, 35 Wash. & Lee L.Rev. 367, 373 n. 39 (1978).

nied. It further appears that the allegations of the complaint are without merit, and that no genuine issue of material fact remains to be decided. Consequently, this Court concludes that defendant Idaho First National Bank is entitled to judgment as a matter of law.