Anna Louise LEFLER, Plaintiff-Appellee, Cross-Appellant,

v.

KENTUCKY FINANCE COMPANY, INC., Defendant-Appellant, Cross-Appellee.

Nos. 82–5324, 82–5351.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1984.

Decided June 18, 1984.

J.R. Bartholomew, Richard W. Hill, Louisville, Ky., Bert Combs (argued), Philip E. Wilson, Kincaid, Wilson, Schaeffer & Hembree, D.G. Lynn, Lexington, Ky., for defendant-appellant, cross-appellee.

David Friedman (argued), Louisville, Ky., for plaintiff-appellee, cross-appellant.

Before EDWARDS and KENNEDY, Circuit Judges, and WEICK, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

This appeal presents the question of whether disclosures by Kentucky Finance Company, Inc. (KFC) in a loan transaction

with Anna Louise Lefler, plaintiff below, violated the Consumer Credit Protection Act (known generally as the Truth in Lending Act, "TILA"), 15 U.S.C. § 1601 *et seq.*

KFC lent Ms. Lefler $1112.58[1], and under a security agreement obtained a security interest in certain items of her personal property. The loan was to be repaid in twenty-five monthly installments. Ms. Lefler argued in the District Court that KFC had violated TILA in two ways. First, she challenged KFC's authority to disclose that the "Rule of 78's" method would be used to compute the portion of precomputed interest charges to be refunded if the loan were prepaid in full. Second, she argued that the description of the type of security interest retained by KFC in her personal property was inadequate under TILA and the applicable regulations.

The District Court, 546 F.Supp. 26, found that the Kentucky statute does not authorize KFC to use the Rule of 78's and that KFC's disclosure was consequently misleading in violation of TILA. KFC appeals. The court further found that KFC's description of the security interest it retained was adequate, and did not violate TILA. Ms. Lefler cross-appeals.

We affirm the District Court's finding that KFC's description of its security interest was adequate under TILA, but reverse the court's finding that the Kentucky statute does not authorize interest refund computation by the Rule of 78's method and that KFC's disclosure was misleading in violation of TILA.

### Adequacy of KFC's Description of its Security Interest

■ The TILA provides that a creditor must set forth a "description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit and a clear identifi-

cation of the property to which the security interest relates." 15 U.S.C. § 1639(a)(8).[2] The Federal Reserve Board's Regulation Z requires that a creditor disclose a "description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit ...." 12 C.F.R. § 226.8(b)(5).[3]

The disclosure statement which KFC used for its loan to Ms. Lefler contained the following language:

SECURITY for this loan is a note, any credit and/or property insurance for which a charge is made as indicated above, and unless checked (☐ no other security) a security interest on the following described property owned by debtors. The security interest on the property, if any, may secure any future indebtedness. Description of encumbered property:

[A typed list of Ms. Lefler's personal property to be encumbered follows.]

Ms. Lefler argues that this language is inadequate under TILA and Regulation Z. She notes that 12 C.F.R. § 226.2(gg)[4] lists several types of security interests. These are:

[S]ecurity interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens, whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

The interest retained by KFC was a security interest under the Uniform Commercial

---

**1.** KFC made the loan under Kentucky Revised Statutes (KRS) Chapter 288, the Petty Loan Act.

**2.** Repealed by Pub.L. No. 96–221, Title VI, § 614(d)(1), 94 Stat. 180 (1980). Congress has substantially revised the Consumer Credit Protection Act by enacting the "Truth in Lending

Simplification and Reform Act," Pub.L. No. 96–221, 94 Stat. 168 (1980).

**3.** The Federal Reserve Board regulations have since been revised. *Cf.* 12 C.F.R. § 226.18.

**4.** Again, the regulations have been revised. *Cf.* 12 C.F.R. § 226.2(a)(25).

Code (UCC), and Ms. Lefler contends that KFC's description should have said, "security interest under the UCC" rather than simply, "security interest" in order to be adequate under TILA.

We disagree. Kentucky has adopted the UCC, at KRS Chapter 355. A security interest is defined under the UCC, KRS 355.1–201(37) as "an interest in personal property or fixtures which secures payment or performance of an obligation." It is clear from the security agreement that the interest KFC retained was in personal property, as each item was described specifically in the agreement. The only possible "type" of security interest that KFC could have retained in plaintiff's personal property under Kentucky law is a security interest under the UCC, and thus the addition of the words "under the UCC" would have been meaningless and mere surplusage. None of the other types of interest set out in 12 C.F.R. § 226.2(gg) could apply here. There is no real property involved, no deed of trust or lease obligation; KFC is not a mechanic, materialman, or artisan, and is not a vendor to Ms. Lefler.

Ms. Lefler cites a Federal Reserve Board Official Staff Interpretation of Regulation Z, No. FC–0023 (November 22, 1976), [1976] Truth in Lending Special Releases: Correspondence [CCH] ¶ 31,491. This opinion states that language in a disclosure statement such as "a security interest established by our contract" or "a security interest through our agreement" does not adequately describe an interest under 12 C.F.R. § 226.8(b)(5). The opinion explains that the "words 'contract' and 'our agreement' may not convey any particular meaning to the customer or assist him in identifying the legal document from which the security interest arises." No such language appears in KFC's disclosure statement. Instead, the statement sets out a list of the property in which the security interest is taken. The staff opinion does state that the language, a "security inter-

est under the Uniform Commercial Code," is adequate under 12 C.F.R. § 226.8(b)(5). The staff opinion supports our position, as it goes on to state that the regulation "does not require creditors to provide a detailed statement of the type of interest acquired or a citation to any specific statutory provision pursuant to which the security interest is obtained."

Plaintiff cites *Pennino v. Morris Kirschman & Co.*, 526 F.2d 367 (5th Cir.1976), which held that the description, "a security interest in the merchandise purchased ... in accordance with existing state laws," was insufficient. *Id.* at 371. *Pennino* is a Louisiana case. Louisiana has not adopted the UCC and has more than one type of security interest in personal property. *See Starks v. Orleans Motors, Inc.*, 372 F.Supp. 928 (1974), *aff'd*, 500 F.2d 1182 (5th Cir.1975). Unlike the case at bar, the security interest created was not limited to an interest under the UCC. The court's concern in *Pennino* was that the debtor be specifically apprised of an applicable vendor's lien granted by Louisiana law.

Ms. Lefler also cites *Fulghum v. Termplan, Inc.*, 383 So.2d 191 (Ala.Civ.App. 1980), in which the court found the description, "[t]his loan is secured by a Security Agreement of even date ..." inadequate. The *Fulghum* court cited *Pennino* and stated, "[t]he disclosure that the loan is secured by a security agreement of even date provides no information about the type or extent of the security interest or the legal rights of the parties." 383 So.2d at 193.

One of the court's concerns was that the disclosure statement referred to another document. This the court said is inadequate. The disclosure here did not refer to some other document. In *Anthony v. Community Loan Investment Corp.*, 559 F.2d 1363 (5th Cir.1977), the Fifth Circuit held that the language, a "security interest ... granted a Secured Party by the Uniform Commercial Code," is sufficient under TILA.[5] We believe that the language, "se-

**5.** *See also* Federal Reserve Board Official Staff Interpretation of Regulation Z, No. FC–0023, *supra.*

curity interest," is also sufficient when it is clear that the interest is in personal property, and the only interest which could be created under state law in such personal property is an interest under the UCC.[6]

Accordingly, we find that KFC's language asserting retention of a "security interest," followed by a specific list of plaintiff's personal property items, is an adequate description under TILA and its regulations.

### Authorization of the Rule of 78's as the Refund Computation Method

■ KFC's loan agreement with Ms. Lefler notified her that if she prepaid the loan in full, she would "receive a refund of charges in accordance with the provisions of K.R.S. 288.530." On the disclosure statement attached to the loan agreement, the following language appears:

REBATE FOR PREPAYMENT IN FULL. If the contract of loan is on a precomputed interest basis and is prepaid in full by cash, a new loan or otherwise before the final installment date, *the portion of the charges applicable* to the full installment period following the installment date nearest the date of prepayment shall be refunded *in accordance with the Rule of 78's* and no refund of less than $1 will be made. (Emphasis added.)

12 C.F.R. § 226.6(c) states that information supplied by a creditor must not be stated, utilized, or placed so as to mislead or confuse the consumer.[7] The District Court found that KRS 288.530(6), which provides for finance charge refunds, does not authorize computation by the Rule of 78's, and KFC's disclosure that the Rule of 78's would be used to compute refunds was therefore misleading in violation of 12 C.F.R. § 226.6(c).

KRS 288.530(6) reads:

If the contract of loan is prepaid in full by cash, a new loan or otherwise before the final installment date, the portion of the charges applicable to the full installment periods following the installment date nearest the date of prepayment shall be refunded. * * * No refund less than $1 need be made. . . .

Thus the language in KFC's disclosure statement is essentially the same as the language in the Kentucky statute, with the addition of the reference to the Rule of 78's.

The question here is whether or not KRS 288.530(6) authorizes computation of refunds by the Rule of 78's. KRS 288.530(6) requires the creditor to refund the charges "applicable" to the period following the installment payment date nearest the date of prepayment. The provision does not, however, indicate how the creditor is to determine what charges are applicable.

KRS 288.530(2) sets out the ratio to be used in calculating the monthly finance charges on a consumer loan. That ratio is:

$$\frac{\text{the portion of charges applicable for any particular month}}{\text{total charges}} = \frac{\text{scheduled balance outstanding for any particular month}}{\text{sum of all scheduled monthly balances}}$$

Similarly, the Rule of 78's[8] uses a fractional equation to compute the finance charges applicable to any given month of a fixed-period loan. The numerator of the fraction for the first month is the total number of months of the fixed period. The numerator decreases by one with each month elapsed. The denominator is the

---

6. See *Martinez v. Idaho First National Bank,* 509 F.Supp. 773 (D.Idaho 1981), *rev'd on other grounds, Dixey v. Idaho First National Bank,* 677 F.2d 749 (9th Cir.1982), in which the court held the language, "I give you a security interest in the merchandise I'm buying" sufficient, and *Drew v. Flagship First National Bank of Titusville,* 448 F.Supp. 434 (M.D.Fla.1977) (citing *Anthony* ), which held sufficient the language,

"seller has and shall retain title to and a security interest in the property."

7. The regulation has since been revised.

8. The Rule of 78's is also known as the "direct ratio method," or the "sum of the digits" method.

sum of the numerators throughout the fixed period. For example, for a 12-month loan, the fraction for the first month is 12/78. Twelve is the total number of months, while 78 is 12 + 11 + 10 + 9 ... + 1. (The name "Rule of 78's" refers to the fact that for a 12-month loan the denominator will always be 78.)

A refund of finance charges upon prepayment of a 12-month loan is calculated under the rule as follows. If prepayment is made after the first month, the creditor will retain 12/78 of the total finance charge. He will retain 12/78 + 11/78, or 23/78 if prepayment is made after the second month; and 12/78 + 11/78 + 10/78, or 33/78, after the third month, and so on. Obviously, the sooner the loan is prepaid, the smaller the fraction of the total finance charges which the creditor retains, and the larger the refund to the borrower. If the borrower pays off the loan only at the end of the twelfth month, the lender will retain 78/78, or the entire finance charge, as per the parties' initial agreement. For a more thorough discussion, see *Bone v. Hibernia Bank,* 493 F.2d 135 (9th Cir.1974).

The fractional equation set out in KRS 288.530(2) is functionally identical to the Rule of 78's and will reach precisely the same result in any interest or interest refund calculation. The Kentucky legislature chose not to call the formula by its shorthand name, but the statute clearly authorizes interest computations by means of the Rule of 78's method.

Plaintiff does not contest the fact that KRS 288.530(2) authorizes interest computation by the Rule of 78's. Instead, she argues that KRS 288.530(6) requires that the actuarial rate,[9] and not the formula in KRS 288.530(2), be used in calculating refunds. The fact that KRS 288.530(2) provides a specific formula to be used to calculate the finance charges for any given month does not mean, she argues, that the formula should be used to calculate the refund under KRS 288.530(6).

We disagree. The most logical reading of the Kentucky statute is that the formula set out in KRS 288.530(2) to calculate interest is to be used to calculate "applicable charges" to be refunded under KRS 288.530(6) as well. The Rule of 78's is the predominant method used in the United States for calculating such refunds. Hunt, *supra* note 9, at 332. The Kentucky statute provides that it is to be used in calculating interest charges. There is simply no indication in the statute that another—less widely used—method be employed in calculating refunds. We also note that KRS 288.530(6) directs that the interest refund be computed from the date beginning the installment period nearest the date of prepayment. The Rule of 78's method calculates interest on a periodic basis. The actuarial method, however, would require a calculation from the actual date of prepayment, which gives us further indication that KRS 288.530(6) directs that the Rule of 78's method be used.

**9.** The Rule of 78's is designed to approximate the actuarial rate, which is the "pure" method of calculating finance charge refunds. Under the actuarial method, every time a creditor receives a payment, he must first calculate the interest due, then deduct the interest from the payment made, and finally apply the balance of the payment to reduce the outstanding balance of the principal. The Rule of 78's comes close to matching the figure produced by the actuarial method, but does favor the lender slightly. The difference between the figures reached by the two methods increases with the duration and interest rate of the loan. James Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions,* 55 B.U.L.Rev. 331 (1975).

In 1983 the Internal Revenue Service announced that interest computed by the Rule of

78's method "lacks economic substance because it fails to reflect the true cost of borrowing," and enables an accrual-base taxpayer to deduct more than the economically accrued interest. Rev.Rul. 83–84, 1983–1 C.B. 97. The Service announced in Rev.Rul. 83–84 that interest must be computed by applying the interest rate to the unpaid balance (principal and accrued interest.) The Service made an exception for short-term (less than five years) consumer loans, however, in Rev.Proc. 83–40, 1983–1 C.B. 774, allowing interest calculations by the Rule of 78's method. The Service recently issued revenue procedures instructing taxpayers on how to change their method of accounting to comply with Rev.Rul. 83–84, but continues to allow accounting by the Rule of 78's for short-term consumer loans, under Rev.Proc. 84–30, 1984–___ C.B. ___.

Accordingly, we find that the District Court was incorrect in finding that the Kentucky statute does not authorize calculation of refunds by the Rule of 78's method. We hold that KFC's disclosure was not misleading in violation of TILA.

The judgment of the District Court is affirmed in part and reversed in part. The action is remanded to the District Court with direction to enter judgment for defendant.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, dissenting in part.

I agree with the District Judge that appellant Kentucky Finance's use of the Rule of 78's is not consistent with Kentucky law and would give effect to the judgment to the extent it is based on that holding.

On all other issues I concur with Judge Kennedy.