In the Matter of EASTERN EQUIP-
MENT COMPANY, a West Virginia
corporation, Debtor.

LEASING SERVICE CORPORATION, a
corporation, Plaintiff,

v.

EASTERN EQUIPMENT COMPANY, a
West Virginia corporation, Defendant.

Civ. A. Nos. 81–2074, 81–2076.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 25, 1983.

Susan Cannon-Ryan, Charleston, W.Va.,
for plaintiff.

Ralph W. Hoyer, Charleston, W.Va., for
defendant-debtor.

ORDER

COPENHAVER, District Judge.

The final order entered by the bankrupt-
cy judge in each of two adversary proceed-
ings is before the court on appeal. These
cases arise out of essentially the same fac-
tual situation and will be treated jointly.

The debtor-defendant, Eastern Equip-
ment Company, filed its petition under
Chapter 11 of the Bankruptcy Act on De-
cember 21, 1979. Plaintiff, Leasing Service
Corporation, filed its complaint in the first
adversary proceeding on January 31, 1980,
seeking relief from the automatic stay of
section 362(a) of the Bankruptcy Act and
further seeking an order requiring the debt-
or to assume or reject two equipment lease
agreements under which Leasing Service's
assignor, Mountaineer Euclid, Inc., leased to
the debtor an RT–58 crane and an RT–620
crane. Additionally, in paragraph 19 of the
complaint, Leasing Service set out the pro-
visions in the lease agreements by which a
blanket security interest in all the debtor's
inventory, goods and equipment, whether
then owned or thereafter acquired, includ-
ing the two cranes, was granted to it in
order to further secure the debtor's under-
takings under those agreements. Para-
graph 19 then concluded as follows:

> The schedules filed by the Defendant in
> this proceeding reveal competing claims
> by several creditors to the remaining
> equipment. The priority of said claim
> will have to be determined by this Court
> before the Plaintiff's claim to said equip-
> ment can be addressed.

Having asserted that each crane was worth
less than the balance due thereon, the com-
plaint then alleged:

1. The creditor has not been afforded
adequate protection of its interest in the
property by the debtor.

2. The debtor has no equity or eco-
nomic interest in the property and the

property is not necessary to the reorganization of the debtor in possession.

The bankruptcy judge, in the course of a thorough analysis of the lease agreements and the surrounding circumstances, aptly concluded that the leases were intended as security and properly held them to be security agreements. As will be more fully developed, the bankruptcy judge also held, *inter alia*, that Leasing Service was entitled to reclaim and sell the two cranes and apply the proceeds on the indebtedness. The proceeds proved insufficient to make Leasing Service whole. Specific items other than the two cranes were not sought in the hearings in the first adversary proceeding.

Before the first proceeding was concluded, Leasing Service filed a second complaint on December 8, 1980, for a lifting of the § 362(a) stay as to thirty-three specified items falling within the blanket lien clause of the lease agreements. A final order in each adversary proceeding was entered on the same day, January 15, 1981. The bankruptcy judge held in the second proceeding, on grounds of *res judicata* arising out of the first, that Leasing Service was barred from pursuing any items beyond the two cranes.

## I.

Section 362(a) provides that a petition in bankruptcy, including a Chapter 11 petition, operates as an automatic stay of any act to obtain possession of or enforce any lien against property of the estate. Relief from the stay may be obtained under § 362(d), reading as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Section 362(g) provides for the allocation of the burden of proof in the following language:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

As a study of section 362(e) will reveal, Congress directed that the bankruptcy court take prompt action to dispose of requests for relief from the automatic stay.[1] Section 362(e) specifies that the automatic stay is terminated as to the parties seeking relief thirty days after the request is made unless the court, after notice and hearing, orders the stay continued in effect pending a final hearing which must be commenced within thirty days after the preliminary hearing. Even then, the court can do so only upon a finding at the preliminary hear-

---

1. Section 362(e) provides:

(e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a prelimi-

nary hearing, or may be consolidated with the final hearing under subsection (d) of this section. If the hearing under this subsection is a preliminary hearing—

(1) the court shall order such stay so continued if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the final hearing under subsection (d) of this section; and

(2) such final hearing shall be commenced within thirty days after such preliminary hearing.

ing that there is a reasonable likelihood that the party opposing the relief, usually the debtor, will prevail at the final hearing.

In gaining an understanding of the issues presented on these appeals, it is helpful at the outset to place adversary proceedings of the kind here involved in their proper context. Complaints to lift the automatic stay are often brought on hurriedly soon after the commencement of a bankruptcy case. They are designed to be conducted in an expedited fashion and are of a summary nature. As stated at 2 Collier on Bankruptcy, ¶ 362.08, p. 362–53 (15th ed. 12/80):

> The time periods specified in the Code are quite brief and underscore the informal nature of stay litigation. While oral testimony may be taken and will be in most cases, the time frame will not permit protracted discovery and may in substantial cases be difficult to adhere to.

Some limitation as to the *res judicata* effect of adversary proceedings to lift the automatic stay of § 362 is underscored by the following comment found at 2 Collier on Bankruptcy, ¶ 361.02, p. 361–15 (15th ed. 12/80), with respect to valuations for purposes of adequate protection under § 361:

> While various methods of determining value may be applied, it is likely that in complex cases the valuation will be based partially, if not wholly, on appraisal. It has been recognized that appraisal is an "inexact science" and the language of

section 506(a) makes it clear that findings as to value will not have a *res judicata* effect. This is consistent with the abbreviated hearing times which will ordinarily apply in determining whether adequate protection has been given in particular situations.[2]

## II.

In the first adversary proceeding, the bankruptcy court conducted a preliminary hearing on February 20, 1980, at which the parties indicated a desire to undertake negotiations to compromise the dispute. As a result, the preliminary hearing was deferred for a time and then held on March 21, 1980, at which point the bankruptcy court set the matter for final hearing on April 15, 1980. At the scheduled final hearing on April 15, 1980, the debtor conceded that it had no equity in either of the two cranes and that it had no hope of reorganization.[3] It thus became unnecessary for Leasing Service to carry the burden of proof on the issue of the debtor's equity in the property as would otherwise have been required by section 362(d)(2) and (g). The bankruptcy court in turn entered an order which made no mention of subsidiary findings of fact, but simply stated, *inter alia,* that,

> After inquiry by the Court and argument of counsel, it appears to the Court as follows:

2. Somewhat similarly, legislative history as to § 362 indicates that—

At the expedited hearing under subsection *(e), and at all hearings on relief from the* stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the Trustee to recover property of the estate or to object to the allowance of the claim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 344

(1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6300–01.

The action commenced by a party seeking relief from the stay is referred to as a motion to make it clear that at the expedited hearing under subsection (e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause of relief from the stay. S.Rep. No. 989, 95th Cong., 2d Sess. 55 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5841.

3. See transcript filed February 22, 1983, of portion of hearing of April 15, 1980, taken from the tape recording on file in the bankruptcy court.

1. That the Defendant has not carried its burden of showing that the Grove Model RT–58 14 Ton Crane, S/N 40622, and the Grove Model RT–620 Crane, S/N 40272, are necessary to the reorganization of the Debtor herein.

2. The Debtor has no equity in said equipment.

3. The Debtor has admitted its inability to reorganize and stated that it will pursue a course of orderly liquidation.

The case was continued generally for consideration of the disposition to be made of rentals received by the debtor from its use of the two cranes from the filing of the Chapter 11 petition until delivery of the cranes to Leasing Service, except for $4,100 in "adequate protection" rentals which were ordered disbursed to Leasing Service. The bankruptcy court further directed that the RT–58 crane be turned over forthwith and that the RT–620 crane be turned over at a date to be determined, which date proved to be on or about May 6, 1980. At the next hearing on August 11, 1980, evidence was received with respect to the rentals derived by the debtor from use of the two cranes during the pendency of the Chapter 11 case.

Thereafter, and before the court had made further rulings in the first adversary proceeding, Leasing Service filed its complaint of December 8, 1980, designed to lift the stay on thirty-three specified items of equipment which it had learned during the course of the bankruptcy case were subject to its blanket security interest under the catch-all and after-acquired property clause of the lease agreements. Although it would have been preferable for Leasing Service to have pursued its claim to the thirty-three items within the framework of the first adversary proceeding, the twin proceedings could readily have been consolidated by the court in order that they might be considered jointly. As already observed, Leasing Service specified in its first complaint that the debtor's schedules revealed competing claims by others to the remaining equipment and that the priority of its claim would have to be determined by the court before its claim to the remaining equipment could be addressed. The parties and the court were plainly on notice throughout that Leasing Service claimed a security interest in the remaining equipment. It was not pursued earlier while the focus of the case was on the two highly valuable cranes as to which Leasing Service clearly held the prior claim and for which it understandably wanted adequate protection. Nor was it necessary to have pursued it earlier in view of the debtor's admission on the record of its lack of equity. The debtor having expressly conceded that it had no equity in the cranes, Leasing Service was entitled to consider that such a concession necessarily meant that the debtor also had no equity in any other property subject to its same lien for the very same claim.

It is clear from the record of the hearings that counsel for Leasing Service was under the mistaken impression that Leasing Service must first reclaim the two cranes and apply the proceeds derived therefrom in reduction of the indebtedness before addressing the remaining equipment under its security agreement.[4] It is equally apparent from the record that counsel for the debtor

---

4. Any procedural failure on the part of Leasing Service through its use of two adversary proceedings where one would suffice may, however, be excusable in view of the newness of some of the controlling provisions of § 362 of the Bankruptcy Reform Act of 1978 such as § 362(e) (expedited hearing provision) and § 362(g)(1) (burden of proof as to equity in property on creditor requesting relief from stay). The new Act became effective October 1, 1979, just three months before the filing of the bankruptcy case and four months prior to the filing of the initial adversary proceeding on January 31, 1980. Forgiving any such failure seems especially appropriate where to do so avoids the conferral of a windfall benefit on the debtor at the needless expense and loss of its creditor, Leasing Service, whose status as a lienholder was fully set out in its publicly-filed financing statements constituting notice to all. It is observed that failure to comply due to lack of familiarity with the Federal Rules of Civil Procedure during the first year or so after the rules became effective in 1938 was frequently

shared this view at least to the extent that such a two-step procedure was proper as distinguished from mandatory. Indeed, it was a sensible course to follow inasmuch as it held out the prospect that issues respecting the remaining equipment might either be mooted or at least reduced in number and magnitude should the two cranes be found to have produced proceeds sufficient to cover all or nearly all of the Leasing Service claim.[5]

Under these circumstances the unresolved issues regarding the remaining equipment were plainly before the court for adjudication and ought to have been addressed before entry of the final orders in both proceedings on January 15, 1981. The order in the first proceeding, insofar as it denied the claim of Leasing Service to other property falling under the blanket lien, was both premature and unsupported by the record before the court. Consequently, the order in the second proceeding, grounded on *res judicata,* was without basis.

### III.

Accordingly, Leasing Service is entitled to retain its security interest in the proceeds of the two cranes and such security interest as it may have in the thirty-three items. Inasmuch as the blanket lien of its catch-all and after-acquired property clause is valid against the debtor and subordinate lien creditors, Leasing Service is entitled to be heard respecting the priority of its lien claim as to the thirty-three items. The validity of its lien claim as against the two cranes as well as the formula for determining the amount of its lien claim are appropriately established in the bankruptcy judge's comprehensive opinion filed in the first adversary proceeding. Further hearings in the two adversary proceedings should be consolidated with each other and with any hearing on objections to claims of Leasing Service. Inasmuch as the question of whether Leasing Service is entitled to "adequate protection" beyond the $4,100 allotted by the bankruptcy court may now become moot, the court declines ruling on that issue and leaves it to such further development, if any, as may be appropriate. In all other respects, the principles enunciated by the bankruptcy judge in his opinion filed in the first adversary proceeding are affirmed.

It is accordingly ORDERED that the two orders of January 15, 1981, now before this court be, and the same hereby are, vacated and these adversary proceedings remanded to the bankruptcy judge for further proceedings consistent herewith.

The Clerk is directed to forward certified copies of this order to all counsel of record herein and to Honorable Edwin F. Flowers, United States Bankruptcy Judge.

---

excused. *Gruskin v. New York Life Ins. Co.,* 1 F.R.D. 22 (W.D.Pa.1939); *Alfred Hofmann, Inc. v. Textile Mach. Works,* 27 F.Supp. 431 (E.D. Pa.1939); *Campbell v. American Fabrics Co.,* 1 F.R.D. 502 (E.D.N.Y.1940); *Burke v. Canfield,* 111 F.2d 526 (D.C.Cir.1940); *contra, MacDonald v. Central Vermont Ry., Inc.,* 31 F.Supp. 298 (D.Conn.1940).

5. Where, soon after a bankruptcy filing, a creditor seeking relief from the § 362 stay holds a security interest not only in equipment sold to the debtor but also a blanket lien on all other debtor assets, including after-acquired property, it will ofttimes be of dubious worth at that early and sometimes confused stage of the bankruptcy case to make the painstaking analysis required to inventory virtually every personal property item of a business debtor's estate, evaluate it, search the records for liens, seek out other potential lienholders and possibly add them as parties as well as determine the validity and amount of their claims and rank the relative priorities of all the claimants as to each such asset. This time-consuming process, expensive to the parties and consuming of the court's resources, may often prove to be utterly useless and highly wasteful as the case develops.