**In the Matter of Gerald Eugene WATSON and Heidemarie Beese Watson, Debtors.**

**Bankruptcy No. MM7–82–01984.**

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 4, 1983.

Steven L. Vollmer, Beloit, Wis., for debtors.

Stephen C. Beilke, Kuemmel & Beilke, S.C., Madison, Wis., for creditor Thorp Finance Corp.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Thorp Finance Corporation filed a claim in this chapter 7 case for $20,336.55, based on a promissory note secured by a mortgage on the debtors' Beloit property. The debtors dispute Thorp's claim, contending that they owe only $14,565.01 on the note, because on November 18, 1982, after this case was filed, Thorp sent them a receipt which listed $14,565.01 as the "Principal" due on the loan. Thorp contends the $14,565.01 figure was inadvertently placed in the space denominated "Principal," but was actually the amount of unearned interest subtracted from the total loan balance to obtain the figure of $20,336.55 which was shown on the receipt as the "Unpaid Balance."

The situation is complicated by the parties' different ways of referring to the amount of the original loan. The debtor calls it a loan for $18,213.98, the amount of cash Thorp advanced when the debtor signed the promissory note. Thorp, on the other hand, refers to the loan as one for $40,924.96: the $18,213.98 plus the $22,710.98 in finance charges which the debtors would pay over the 10-year term of the loan.

Thorp's claim for $20,336.55 as of the day the debtors filed this case was calculated by using the "Rule of 78's" to arrive at a credit for unearned finance charges. The note signed by the debtors states: "upon prepayment in full, any unearned finance charge will be computed ... according to the 'Rule

of 78's' and credited to the account." The debtor claims that Thorp's use of the "Rule of 78's" rather than some other unnamed method amounts to making a claim for "unmatured interest" which is prohibited by § 502(b)(2) of the Bankruptcy Code.

The "Rule of 78's" or "sum-of-the-digits" method is commonly used to compute the interest rebate when a debtor prepays a loan with precomputed interests. Interest payments determined by either a "straight-line" method or the "Rule of 78's" are higher at the start of the repayment period than at the end because the amount of unpaid principal on which interest is calculated is higher. The "Rule of 78's" also has the effect of slightly accelerating interest payments. Therefore, the interest charged a debtor under the "Rule of 78's" is even higher than those calculated under the "straight-line" method. However, as the U.S. Court of Appeals for the Ninth Circuit notes:

> The results obtained by the Rule of 78's method closely approximate those of the 'actuarial' method in which the rebate bears a more direct relationship to the amount of money received and the time for which it is used, and in which 'true' interest yields are produced....

*Bone v. Hibernia Bank,* 493 F.2d 135, 137 (9th Cir.1974).

The debtors in this case have argued that, since the original amount loaned to them ($18,213.98) is smaller than the amount they are now being asked to repay ($20,336.55), the method used to calculate the amount due must be resulting in the inclusion of unmatured interest. There is, however, no evidence that the amount in excess of the principal advanced to the debtors has not actually been earned. Charges other than unearned interest may account for the difference. Furthermore, if the difference in the credit given using the "Rule of 78's" and the "straight-line" or "actuarial" method is slight, then it is unlikely that any substantial amount of the finance charge claimed by Thorp is unearned.

The variance in amount of credits has caused one bankruptcy judge to disallow

the use of the "Rule of 78's" in calculating interest rebates upon default:

> Notwithstanding the acquiescence of various state and regulatory authorities in the Rule of 78's, this Court finds that it is slanted unduly in favor of the creditor and will not permit its use on precomputed interest add-on loans, which require the Court's approval, that is, on either reaffirmation under Chapter 7 or the establishment of secured priority claims under Chapter 13.... [The finance companies] programs can continue to be based upon the Rule of 78's, but the agreements must state that interest will be calculated on a straight line basis in the event of prepayment or default.... The important factor is that the agreement provide that a proportionate amount of interest will be allocated to each month of the scheduled payment period in the event of prepayment or default.

In Re Willis, 6 B.R. 555, 562 (Bkrtcy.N.D.Ill. E.D.1980). The court made this determination despite several Illinois interest rebate statutes "contemplating but not requiring the Rule of 78's." 6 B.R. at 562. Wisconsin has a similar statute on rebates and consumer credit transactions, but seems to require, not merely permit the use of the "Rule of 78": See Wis.Stat. § 422.209(1) and (2).

The Willis court recognized some disparity between the actual amount of rebate owed the debtor upon default/prepayment and the amount obtained using the "Rule of 78's." However, it did not go so far as to call the difference "unmatured interest" under 11 U.S.C. § 502(b)(2). Moreover, the Ninth Circuit condoned the use of the "Rule of 78's" and found it not to be a prepayment penalty under the Truth in Lending Act. Bone, 493 F.2d at 140–41. Finally, one bankruptcy court has simply assumed that applying the "Rule of 78's" accomplishes the purposes of § 502(b)(2):

> Section 502(b)(2) of the Bankruptcy Code requires the deduction of unmatured or unearned interest from the accelerated balances. This is accomplished by the application of the Rule of 78s as dictated by W.Va.Code § 47–6–5a.

In Re Eastern Equipment Co., 11 B.R. 732, 739 (Bkrtcy.S.D.W.Va.1981). In that case however, the "Rule of 78's" was not at issue.

■ In summary, the "Rule of 78's" is a generally accepted method of computing finance charge rebates. It does result in a slightly higher interest rate than the "straight-line" method but this difference has been adjudged to be slight and does not result in a charge for unmatured interest under 11 U.S.C. § 502(b)(2).

■ The debtor's claim that the "Rule of 78's" clause in the note is an "ipso facto clause," impermissible in computing the claim under § 502(b)(2), is also without merit. The legislative history of § 502(b)(2) states: "Whether interest is matured or unmatured on the date of bankruptcy is to be determined without reference to any ipso facto or bankruptcy clause in the agreement creating the claim." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 352–54 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6307–6310. However, an ipso facto bankruptcy clause is one which states that if the party files for bankruptcy certain things will happen (e.g. the contract will be void, the debt will be accelerated, etc.). The clause in this case states: "upon prepayment in full, any unearned finance charge will be computed as of the nearest installment due date according to the 'Rule of 78's' and credited to the account." It does not relate specifically to bankruptcy. The fact that Thorp relied on this clause in determining the interest rebate due the debtor as of the date of bankruptcy does not make the provision an "ipso facto" clause. Some method is needed to determine the credit due for unearned interest on the date of bankruptcy to file an accurate claim. Thorp uses its prepayment clause for this calculation since the purpose of the prepayment calculation is to determine the amount owed on the loan as of any given day. There is nothing under 11 U.S.C. § 502(b)(2) that suggests Thorp's use of the clause is inappropriate.

Finally, the debtors contend that Thorp's November 18, 1982 receipt statement should bind Thorp to a claim of $14,565.01. After the debtors filed bankruptcy on November 10, 1982, Thorp sent the debtors a receipt which erroneously designated $14,565.01 as the amount of principal due as of November 18, 1982.[1] The erroneous figure, $14,565.01, is actually the amount of unearned interest to be credited not the amount of principal owed. The error was substantial and potentially misleading to the debtors.

■ The debtors now argue that their understanding that the $14,565.01 figure was the principal amount they owed Thorp should limit Thorp's claim. I do not agree. The receipt was not the agreement between the parties, and no evidence has been tendered that the erroneous figure has actually been relied upon by the debtors in connection with their decision to seek relief in bankruptcy. The only agreement between the parties is the promissory note, and it is to the note alone that reference should be made to determine the debtors' obligation and Thorp's claim in this case.

Thorp computed the amount of $14,565.01 as the rebate interest due the debtors by applying the "Rule of 78's" to the outstanding debt. The debtor has put forth no alternative figure for the credit. By applying that credit Thorp has calculated a balance due on the date this case was commenced of $20,336.55. That is the amount of Thorp's allowed claim.

Upon the foregoing which constitutes my findings of fact and conclusions of law in this matter it is hereby

ORDERED that the claim of Thorp Finance Corporation be and hereby is be allowed as filed for $20,336.55.

---

1. The amount due on November 18th was the same as the amount due on November 10th, the date of filing (Beilke affid.)