In re Jesse HUGHES, Jr., Barbara Jean Hughes, Debtors.

Kenneth C. MEEKER, Trustee in Bankruptcy for Jesse Hughes, Jr. and Barbara Jean Hughes, Plaintiff,

v.

BLOOMINGTON FEDERAL SAVINGS AND LOAN ASSOCIATION; Security Pacific Finance Corporation; Jesse Hughes, Jr. and Barbara Jean Hughes, Defendants.

Bankruptcy No. 285–00481.
Adv. No. 285–0162.

United States Bankruptcy Court,
C.D. Illinois.

May 5, 1986.

Kenneth C. Meeker, Danville, Ill., for plaintiff.

Stephen K. Sheffler, Champaign, Ill., for defendant.

William L. Hatch, Champaign, Ill., for debtors/defendants.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This Court in this case is called upon to resolve the factual question of how much money is owing on a loan due defendant, Security Pacific Finance Corporation, before it can proceed further with the Trustee's petition to sell real estate.

On April 2, 1980, the debtors executed a note with Security Pacific Finance Corporation. The note was secured by a mortgage on the debtors' principal residence. The debtors agreed to pay 120 monthly installments of $390.79 each, commencing May 7, 1980. The transaction is further summarized as follows:

| | |
|---|---|
| $15,588.92 | 1. Cash advance |
| $ 2,701.08 | 2. Net balance on prior account |
| $ None | 3. Disability Insurance Premium |
| $ None | 4. Life Insurance Premium |
| | Household goods Insurance |
| $ None | 5. Premium |
| | Fees (Filing, Recording & |
| $ 10.00 | 6. Releasing) |
| | Fees (License, Cert. of Title and |
| $ None | 7. Registration) |
| | Amount Financed (Sum of 1 thru |
| $18,300.00 | 8. 7) |
| $28,594.80 | 9. FINANCE CHARGE |
| $46,894.80 | 10. Total of Payments |
| | ANNUAL PERCENTAGE |
| 23.00% | 11. RATE |

Over the next three years the debtors paid over $14,000.00 on the loan. On May 16, 1983, the balance on the note was $32,651.73.

On June 22, 1983, the note was refinanced to bring it up-to-date. Using the "Rule of 78's", Security Pacific calculated the payoff of the April 2, 1980 loan as $19,572.46. Accordingly, a new note was signed by the debtors in which they agreed to pay 35 monthly installments of $315.00 each and a final installment of $19,618.00.

The transaction is further summarized as follows:

| | |
|---|---|
| $ 146.34 | Proceeds Of Loan Paid To Me Or To Others At My Request |
| $19,571.32 | Other Account With Lender To Be Paid In Full By This Loan |
| $ 14.00 | Real Estate Recording Fee Paid To Public Official |
| $ 131.50 | Title Search Or Insurance Premium Paid To Title Company |
| $19,863.16 | Amount Financed |
| $10,779.84 | FINANCE CHARGE (Includes $605 loan fee and $10,174.84 intent) |
| $30,643.00 | Total of Payments |
| 18.32% | ANNUAL PERCENTAGE RATE |

The debtors paid 21 monthly installments before filing their Chapter 7 petition in bankruptcy on June 7, 1985. The balance remaining on the loan was $19,847.95.

The debtors argue that since the original amount loaned to them in 1980 ($18,300.00) is smaller than the amount they are now being asked to repay ($19,847.95), there is an error in the computation. However, they do not identify the nature or amount of the alleged error. Rather, they simply argue that the debt is too high and request this Court to reduce the loan by some unspecified amount.

Part of the confusion in this case arises from the parties' different ways of referring to the amount of the original loan. The debtors call it an $18,300.00 loan, the amount financed when the debtors signed the promissory note in 1980. Security Pacific Finance Corporation, on the other hand, refers to the loan as one for $46,894.80, the $18,300.00 financed plus the $28,594.80 in finance charges which the debtors would pay over the 10-year term of the loan.

Additional confusion arises from Security Pacific's use of the "Rule of 78's" to arrive at a credit for unearned finance charges. The note signed by the debtors in 1980 states:

"For prepayment in full of the unpaid balance hereof prior to maturity, the Borrower shall receive a refund or credit of

that proportion of the original Finance Charge which the sum of the monthly balances scheduled to follow such prepayment in full bears to the sum of all the monthly balances, both sums to be determined according to the payment schedule originally contracted for (Rule of 78)."

The "Rule of 78's" is explained in *In re Clausel*, 32 B.R. 805, 810 (Bkrtcy.W.D. Tenn.1983) as follows:

"The "Rule of 78's" (or "sum of the balances") (or "sum of the digits") method is generally used by creditors in installment credit transactions to calculate the unearned interest so that their net claims can be determined. The Rule of 78's is based on the premise that the amount of finance charge rebated upon prepayment should reflect the fact that, in an installment loan transaction, the consumer has use of a larger portion of the principal during the early part of the loan. It is based on the idea of a 12-month loan repayable in equal installments where if the borrower takes out a $1,200 loan, he has use of 12 $100 bills the first month, 11 $100 bills the second month, 10 the third month, and only one the last month. He, therefore, has use of 78 $100 bills (12 plus 11 plus 10 ... plus 1). The number 78 becomes the denominator of the fraction while the numerator depends upon when the prepayment takes place. If the prepayment is made at the seventh installment, 57/78 of the total finance charge has been earned by the creditor (the numerator is the sum of 12, 11, 10, 9, 8 and 7). J. Fonseca and P. Teachout, Handling Consumer Credit Cases (2nd ed. 1980)."

See *In re Watson*, 32 B.R. 491, 492 (Bkrtcy.W.D.Wis.1983); *In re Willis*, 6 B.R. 555, 561 (Bkrtcy.N.D.Ill.1980).

In *Watson, supra,* the Court approved the use of the "Rule of 78's" in calculating unearned finance charges:

"[T]he "Rule of 78's" is a generally accepted method of computing finance charge rebates. It does result in a slightly higher interest rate than the "straight-line" method but this difference has been adjudged to be slight and does not result in a charge for unmatured interest under 11 U.S.C. § 502(6)(2)."

32 B.R. at 493.

*In re Clausel, supra,* also approved the use of the "Rule of 78's" to calculate unearned finance charges. The Court specifically rejected the "pro-rata" method espoused in *In the Matter of Gossage*, 1 B.C.D. 1539, 1541 (B.C.W.D.Mo.1975) and *In re Willis*, 6 B.R. 555 (Bkrtcy.N.D.Ill. 1980):

"The pro-rata method of calculating unearned finance charges, as proposed by the trustee and debtors in this case, provides a substantial benefit to the debtors while not taking into consideration that the debtor has the use of more of the creditor's money or property during the first installment payments than during the last installment payments (as referred to above in the discussion of the Rule of 78's.)"

32 B.R. at 810. See *In re Eastern Equipment Company*, 11 B.R. 732, 739 (Bkrtcy. S.D.Va.1981); *Bone v. Hibernia Bank*, 493 F.2d 135, 137 (9th Cir.1974).

The "Rule of 78's" has been criticized as being unduly slanted in favor of the creditor. *In re Willis*, 6 B.R. 555, 562 (Bkrtcy. N.D.Ill.1980). However, the Rule has no application when the loan is paid in full:

"The bias which the Rule of 78's produces for the lender pertains only where the loan is prepaid or where the loan is defaulted. If the loan is prepaid, the lender gets credit for a disproportionate amount of interest, which increases the principal remaining to be paid by the borrower. If the loan is defaulted, the result is the same. A disproportionate amount of the early payments is treated as interest with the result that the deficiency payable by the borrower is large."

6 B.R. at 562.

■ In the case at bar, the debtors voluntarily signed the 1980 note which provided for the computation of unearned finance

charges by the "Rule of 78's." There is nothing illegal about the "Rule of 78's"; Illinois law contemplates but does not require the "Rule of 78's." See *In re Willis, supra,* 6 B.R. at 562. As also recognized in *Willis* the Rule's bias in favor of the creditor only comes into play when the loan is prepaid or defaulted. The debtors in this case voluntarily prepaid the loan. They were not bankrupt at this time. Neither were they defaulted, although they may have been slightly behind in their payments. As a result of the payoff of the 1980 loan, the debtors obtained a reduction in the amount of their monthly installments from $390.79 to $315.00 and a 4.68% reduction in the annual percentage rate.

█ Since the "Rule of 78's" was allowed by the contract and state law, we believe the "Rule of 78's" was the proper method for calculating the payoff balance of the 1980 note in June, 1983. The debtors have not proposed an alternative method for calculating the payoff balance. Nor have they presented any evidence to indicate that Security Pacific's calculations are wrong. The mere allegation that the computations are wrong simply because the payoff figure is higher than the amount originally loaned was specifically rejected in *In re Watson, supra,* 32 B.R. at 492. As noted above, although the original amount financed was only $18,300.00, the total of payments on the note was $46,-894.80. The payoff figure was significantly lower than the latter figure. Thus, contrary to the debtors' assertions, there was a reduction in the amount the debtors owed to Security Pacific.

The ledger card of Security Pacific indicates that on the date this case was commenced the note had a balance due of $19,-847.95. This is the amount of Security Pacific's allowed claim.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.