In re Wendell Nelson GASS, Dorothy Marie Gass, Debtors.

Wendell Nelson GASS, Dorothy Marie Gass, Plaintiffs,

v.

MID–STATE HOMES, INC., & Best Insurors, Inc., Defendants.

Bankruptcy No. 1–84–00178.
Adv. No. 1–84–0169.

United States Bankruptcy Court, E.D. Tennessee.

Dec. 31, 1985.

Robert J. Harriss of Harriss, Hartman, Aaron, Townley, & Wharton, Rossville, Ga., for plaintiffs.

Richard H. Gill of Copeland, Franco, Spears and Gill, Montgomery, Ala., and Phillip M. Durrence of Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for defendant, Mid-State Homes, Inc.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This is a suit by the chapter 13 debtors against the holder of a mortgage on their house, Mid-State Homes, to determine how they should divide the money paid by the fire insurance company after the house burned to the ground. The parties stipulated the facts as follows.

On November 22, 1980, Wendell N. Gass and wife, Dorothy M. Gass entered into and signed a contract with Jim Walter Homes in Scottsboro, Alabama. Under the terms of the contract, Jim Walter Homes was to build a house for the plaintiffs on their property located in Flat Rock, Alabama, for the cash price of $23,315.00.

On the same date, Wendell N. Gass and Dorothy M. Gass financed their house through Jim Walter Homes, the terms of which were that they were required to make 180 monthly payments of $249.90 for a deferred purchase price of Forty-Four Thousand Nine Hundred Eighty-Two Dollars and No/100 ($44,982.00). The plaintiffs executed a promissory note and mortgage to secure the note in favor of Jim Walter Homes.

Specific terms under the mortgage agreement and building contract required the plaintiffs to keep the property in good repair and to keep the property insured making the proceeds payable to Jim Walter Homes, Inc., or its assigns to the extent of its interest in the property.

The mortgage and contract also provided that if the plaintiffs failed to procure adequate insurance on the property, the mortgagee had the right to purchase such coverage on behalf of the buyer and add the premiums to the outstanding indebtedness.

The plaintiffs procured insurance on the property through Best Insurors, Inc. Best Insurors, Inc. procured a policy of insurance from International Insurance Company to cover the subject property. Best Insurors, Inc., did not issue the insurance policy itself and its only connection with this matter was procurement of an insurance policy from an independent insurance company.

The terms of the mortgage agreement provided that "in the event that Buyer is in default in the performance of any of his obligations under this contract", then the creditor may at its option accelerate the amount then owing and declare it due and payable.

The terms of the mortgage agreement and the contract also provided that in the event of acceleration, the plaintiffs "shall receive a refund credit for the unearned finance charges computed pursuant to the Rule of 78's". The contract also provided that "Buyer may prepay in full the unpaid time balance of this contract at any time and upon prepayment" the unearned finance charge refund due the plaintiffs shall be computed pursuant to the Rule of 78's.

Subsequent to the execution of the building contract, promissory note and mortgage agreement, all papers were duly conveyed by Jim Walter Homes, Inc., to Mid-State Homes, Inc., the defendant.

In July, 1983, the defendant received notice that the insurance policy was being canceled for failure to pay insurance premiums. Plaintiffs did not receive these notices. Pursuant to the terms of the party's contract, Mid-State paid insurance premiums due on the policy in the amount of $365.00 on October 5, 1983, and this amount was added to the balance of the plaintiffs' indebtedness.

On December 17, 1983, the plaintiffs' house was completely destroyed by fire.

The cause of the fire remains unknown at this time and it is undisputed that the fire was not the result of any intentional act or other fault on the part of the plaintiffs.

Prior to the fire the plaintiffs had paid monthly installments in the amount of $7,996.80 toward the aforementioned deferred payment price.

The last payment made by the plaintiffs was on November 30, 1983, in the amount of $126.00. This amount constituted one-half of the installment due for the month of October, 1983, and no other payments were made thereafter.

At the time of the fire, the house was insured in the amount of $24,000.00. Mid-State Homes was named as mortgagee and loss payee on the standard fire loss insurance policy.

Immediately after the fire, Mid-State Homes informed the plaintiffs that the payoff on the loan was $23,200.91, and that the proceeds from the insurance policy would be used to satisfy the loan. The plaintiffs made no further payments on the mortgage and a notice of processing the claim was sent to the plaintiffs on December 30, 1983.

Mid-State calculated the total payoff on the loan pursuant to the Rule of 78's. Mid-State contends that according to the Rule of 78's the plaintiffs were due a rebate from the insurance proceeds in the amount of $799.09. Prior to February 1, 1984, International Insurance Companies issued its draft for the total amount due under the policy, $24,000.00 to Mid-State Homes, said draft being payable to Mid-State Homes and the plaintiffs.

On February 1, 1984, Mid-State Homes sent the insurance draft along with its own check in the amount of $799.09 payable to the plaintiffs to the Scottsboro, Alabama, office of Jim Walter Homes, Inc., requesting the plaintiffs' signature on the insurance company's draft in return for payment to the plaintiffs of $799.09, which represented the difference between the insurance draft and the net payoff on the plaintiffs' account.

On February 7, 1984, the plaintiffs filed a petition for a Chapter 13 bankruptcy.

The plaintiffs refused to endorse the original insurance draft.

On February 17, 1984, the plaintiffs' attorney sent a letter to Mid-State Homes expressing the opinion that the payoff on the loan should have been figured by a pro rata apportionment method rather than the Rule of 78's. Mid-State responded by expressing their opinion that prepayment on the loan through insurance proceeds warranted a rebate according to the Rule of 78's and no Alabama law required a pro rata apportionment.

On February 29, 1984, the plaintiffs' attorney sent Mid-State Homes another letter expressing the opinion that computation of the unearned finance charge pursuant to the Rule of 78's could only be used in case of default. Mid-State responded by letter dated March 12, 1984, expressing the opinion that the Rule of 78's was appropriate whether prepayment or acceleration was voluntary or involuntary.

On April 2, 1984, the plaintiffs' attorney responded by letter expressing the opinion that he did not agree with the interpretation of the mortgage and that the plaintiffs were not in default. Mid-State's legal department responded by letter dated May 14, 1984, expressing the opinion that insurance coverage was irrelevant to the issue of default.

Subsequently, Mid-State Homes returned the $24,000.00 draft to International Insurance Company and requested a draft payable to Mid-State Homes in the amount of $23,200.91 which represented the net payoff on the plaintiffs' loan. Mid-State received this draft along with a hold harmless agreement from the International Insurance Company in May, 1984.

Plaintiffs contend that subsequent to February 24, 1984, Mid-State Homes formally gave plaintiffs notice for the first time that Mid-State was declaring the mortgage to be in default and was accelerating the entire indebtedness.

The defendant contends that it notified the plaintiffs that the insurance proceeds would be used to satisfy the balance of the indebtedness shortly after the house was totally destroyed by fire. The defendant contends further that pursuant to Alabama law the extent of its interest is determined by the Rule of 78's and that prepayment warrants the rebate pursuant to the Rule, rendering the issue of default irrelevant to the payment of insurance proceeds.

On July 3, 1984, the plaintiffs filed a complaint seeking to recover additional proceeds.

The plaintiffs contend that the refund due to them if the finance charges were calculated pursuant to the pro rata method would be $2,714.68.

The defendant contends that after using the Rule of 78's to determine the unearned finance charges, an annual rate of finance charge on the entire transaction was only 11.44% from the time of execution of the mortgage until its payoff.

The insurance proceeds of $799.09 have been paid to the plaintiffs. The amount in controversy and dispute is $1,913.59.

The court adds one additional fact. The contract provided for interest at a 10% annual percentage rate.

### Discussion

The plaintiffs rely on Bankruptcy Code § 502(b)(2). 11 U.S.C. § 502(b)(2). It establishes a general rule that interest on a debt is collectible from the bankruptcy estate only to the extent it is earned before the filing of the bankruptcy petition. The filing of the petition creates the bankruptcy estate. 11 U.S.C. §§ 541 & 302.

The plaintiffs seek to recover about $1,900 as unearned interest. This is the difference between the interest that Mid-State calculated as due at the time of the fire by using the rule of 78's and the interest that would have been earned up to the time of bankruptcy at the basic contract rate of interest. The plaintiffs argue that the additional interest was not earned before bankruptcy under § 502(b)(2) of the Code and is not allowable as a claim against the bankruptcy estate.

■ Mid-State made the argument that it is not trying to collect unearned interest from property of the bankruptcy estate. Mid-State essentially argues that it and the plaintiffs became the joint owners of the insurance money before the plaintiffs' bankruptcy, according to their rights under the contracts and state law. To the extent of the principal debt and the interest allowable outside of bankruptcy, Mid-State would be entitled to the insurance. Section 502(b)(2) would be irrelevant.

This argument must be rejected. Mid-State's right under the insurance policy was to be paid as its interest appeared. Mid-State's interest was a lien for payment of its debt. No matter how you construe it, Mid-State was at the time of the plaintiff's bankruptcy simply a creditor trying to collect its debt from a particular fund available to pay the debt. In bankruptcy cases the courts generally have not treated the secured creditor's share of insurance money received for the destruction of the collateral as property owned by the secured creditor. See *Chapman v. England*, 231 F.2d 606 (9th Cir.1956); *Pearson v. Rapstine*, 203 F.2d 313 (5th Cir.1953); *In re Kink*, 15 B.R. 701, 33 UCC Rep. 404 (Bankr.W.D.Mo.1981).

The court is of the opinion that under the facts of this case Mid-State should not be allowed the additional interest brought about by using the rule of 78's.

■ The fire itself was not a breach of the debtors' covenant to keep the house in good repair, and thus did not entitle Mid-State to accelerate the debt. The requirement that the debtors keep the premises insured was Mid-State's protection against damage or destruction by fire. A covenant to keep the premises in good repair serves a different purpose. *Erickson v. Rocco*, 433 S.W.2d 746 (Tex.Civ.App.1968).

In *Nationwide Mutual Fire Insurance Company v. Wilborn*, the Alabama Supreme Court discussed the effect of destruction if the mortgaged premises before and after foreclosure as it affected the mortgagee's right to the insurance proceeds. 291 Ala. 193, 279 So.2d 460 (1973). The court, however, did not consider the

specific question of whether destruction of the premises by fire was a default entitling the mortgagee to accelerate the debt.

Prepayment under the parties' contract and under the Alabama statute should be read to mean voluntary prepayment by the debtors, not prepayment brought about against the debtors' will and through no fault of their own when the house was destroyed by fire.

No matter how you look at it the rule of 78's imposes a penalty on prepayment. By calling it a penalty, the court does not mean that the rule of 78's can never be used to calculate a claim against the bankruptcy estate. If allowed by contract or state law, the rule of 78's may be the appropriate method for calculating interest owed at the time of bankruptcy when there has been a prepetition default and acceleration of the debt. Some courts have approved the use of the rule of 78's. *In re Watson,* 32 B.R. 491, 9 C.B.C.2d 345 (Bankr.W.D.Wis.1983); *In re Clausel,* 32 B.R. 805 (Bankr.W.D.Tenn.1983); *In re Eastern Equipment Co.,* 11 B.R. 732 (Bankr.S.D.W.Va.1981). The court in this case does not establish any general rule as to whether the rule of 78's can or cannot be used in calculating the interest earned on a debt before the debtor's filing of a chapter 13 petition.

The courts have been concerned that allowing an accelerated rate of interest upsets the bankruptcy policy of equitable distribution. Creditors in essentially the same situation would be treated differently according to which ones had declared a default and accelerated their debts before bankruptcy. Furthermore, any increase in a secured claim by increasing the rate of interest above the basic contract rate can reduce the amount available to pay on unsecured claims. *In re Willis,* 6 B.R. 555 (Bankr.N.D.Ill.1980); *In re United Merchants and Manufacturers, Inc.,* 5 B.C.D. 1016 (Bankr.S.D.N.Y.1979); *In re Gossage,* 1 B.C.D. 1539 (Bankr.W.D.Mo.1975).

Allowing Mid-State to use the rule of 78's in this case would simply give it a windfall or impose an uncalled-for penalty on the debtors to the detriment of their other creditors. The destruction of the house by fire was not the debtors' fault. Mid-State treated the debt as paid by the insurance money at or about the time of the fire. The debtors' subsequent failure to continue payments should be considered irrelevant. The debtors had defaulted in making payments before the fire but were not deeply in arrears and Mid-State had not declared a default and "at its option" accelerated the debt. Acceleration after the bankruptcy petition was filed was automatically stayed. 11 U.S.C. § 362. The court has already pointed out that the fire itself and the prepayment by the insurance company should not entitle Mid-State to use the rule of 78's. In these circumstances the rule of 78's should not be used to gain an unwarranted advantage over other creditors.

Since the debtors have not claimed the additional interest as exempt, the court will enter an order directing Mid-State to pay it to the chapter 13 trustee for distribution to creditors under the plan.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.