### In re Walter Grayson McMURRAY, Debtor.

### No. 97–20575.

United States Bankruptcy Court, E.D. Tennessee.

March 19, 1998.

Richard L. Banks, Richard Banks & Associates, P.C., Kingsport, TN, for Walter G. McMurray.

James A. Matlock, Jr., Thomas A. Snapp, Ayres & Parkey, Knoxville, TN, for City Finance Company and Blazer Financial Services, Inc.

## MEMORANDUM

MARCIA PHILLIPS PARSONS,
Bankruptcy Judge.

This case is before the court on the debtor's objections to the claims of Blazer Financial Services, Inc. ("Blazer") and City Finance Company ("City Finance"). The debtor asserts that the claims should be disallowed in part because they include unmatured interest in violation of 11 U.S.C. § 502(b)(2) in that the balances were derived by the "Rule of 78." The court agrees and for the reasons set forth below, the objections will be sustained. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

### I.

On March 6, 1997, the debtor commenced this chapter 13 case and proposed a sixty-month plan which was later confirmed without opposition by order entered May 1, 1997. Under the debtor's plan, general unsecured creditors are slated to receive dividends of 30% of their claims or funds available, whichever is greater. City Finance and Blazer timely filed claims in the respective amounts of $2,423.97 and $545.76. The proof of claim filed by City Finance is designated as unsecured, while the proof of claim filed by Blazer recites that it is secured, although no documentation evidencing a security agreement is attached.[1] Both claims were listed by the debtor as unsecured debts in his schedules. No provision was made for payment of Blazer's claim as secured in the debtor's confirmed plan. Because Blazer did not object to the plan prior to confirmation, its claim is being paid under the plan as unsecured.[2]

The objections to the claims of Blazer and City Finance which are presently before this court were filed by the debtor on October 21, 1997. Blazer and City Finance filed responses in opposition to the objections on November 13 and 14, 1997, respectively. A preliminary hearing on the objections and responses was held on December 2, 1997. Based on counsels' representations at the hearing that no factual matters were in dispute, the court issued a scheduling order on December 5, 1997, directing the parties, *inter alia*, to file a joint pretrial statement containing a "statement of all stipulations, including pertinent documents to be considered by the court," brief statements of each of the grounds for the debtor's objections and the creditors' defenses, and a statement of contested legal issues. Upon the filing of the joint pretrial statement, the court entered an order on January 20, 1998, striking the scheduled final hearing and taking the legal issues to be decided under advisement. Each party was given seven days in which to request an evidentiary hearing on any issue raised by the objections and responses. No hearing was requested.[3]

1. Actually, both City Finance and Blazer filed two proofs of claim each. In addition to its unsecured claim, City Finance filed a secured claim in the amount of $947.84, secured by a one-half caret diamond ring. The confirmed plan provides for payment of this ring with a value of $948.00 at $22.00 per month plus 12% interest. The debtor has not objected to this claim. Blazer also filed a second secured claim in the amount of $911.88, which again failed to attach any document in support of secured status. Fed.R.Bankr.P. 3001(c) and (d) respectively provide that "[w]hen a claim ... is based on a writing, the original or a duplicate shall be filed with the proof of claim" and that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Although the debtor also initially objected to this claim of Blazer, that objection was voluntarily withdrawn by the debtor pursuant to an order entered December 10, 1997.

2. The "NOTICE OF COMMENCEMENT OF CASE UNDER CHAPTER 13 OF THE BANKRUPTCY CODE, MEETING OF CREDITORS, AND FIXING OF DATES" issued by the clerk and served upon Blazer on March 21, 1997, advised that "SECURED CLAIMS WITH NO PLAN TREATMENT WILL BE PAID AS UNSECURED."

3. Blazer and City Finance together filed a memorandum of law on January 9, 1998. The debtor's brief was served by mail and facsimile on January 9, and filed on January 14, 1998. On January 13, 1998, Blazer and City Finance filed a motion to strike *sections II., III .,* and *parts (1)–(3)* of section *IV.* of the debtor's brief "on the basis that said portions of said Brief are outside the scope of the Joint Pretrial Statement...." *Section II.* is an explanation of the mechanics of the Rule of 78, *section III.* contains the issues as rephrased by the debtor, and *parts (1)–(3)* of *section IV.* include some of the debtor's argu-

In their joint pretrial statement filed December 22, 1997, the parties stipulated the following:

(1) Both Blazer and City Finance are corporations duly authorized to conduct business in the state of Tennessee as industrial loan and thrift companies pursuant to Tenn.Code Ann. § 45–5–101, *et seq .;*

(2) The debtor borrowed a sum of money from Blazer pursuant to a promissory note and security agreement dated December 2, 1996, and "[t]rue and correct copies of the loan documentation evidencing this indebtedness are attached ... as collective *Exhibit A* " to the joint pretrial statement;

(3) The debtor borrowed a sum of money from City Finance pursuant to an instrument dated November 20, 1996, and "[t]rue and correct copies of the loan documentation evidencing this indebtedness are attached ... as *Exhibit C* " to the joint pretrial statement;

(4) Proofs of claims by Blazer and City Finance were filed in the respective amounts of $545.76 and $2,423.97, and the calculations for those balances are set forth in *Exhibits B* and *D* to the joint pretrial statement; and

(5) In deriving the balances for the claims at issue, the Rule of 78 was utilized in determining the rebate for unmatured interest pursuant to Tenn.Code Ann. § 45–5–402.

The contested issues as presented by the parties in their joint pretrial statement are whether:

1. In computing a net balance for claim filing purposes under 11 U.S.C. § 502, is a Tennessee industrial loan and thrift company permitted to apply the Rule of 78 in determining rebate of unmatured interest?

2. Are the claims of other unsecured creditors in this chapter 13 bankruptcy adversely affected if City Finance and Blazer are allowed to use the Rule of 78's to net their claims?

3. Has the Bankruptcy Code superseded and preempted the application of T.C.A. § 45–5–101 et seq.?

Blazer and City Finance maintain that they are required by state law to utilize the Rule of 78 accounting method in calculating the rebate of unmatured interest for their claims. The debtor contends that the net balances should be derived using the actuarial accounting method, which as a general rule provides a greater credit to the borrower, and that the use of the Rule of 78 method violates the requirement of § 502(b)(2) of the Bankruptcy Code that allowed claims may not contain unmatured interest.

### II.

 11 U.S.C. § 502(b)(2) provides in pertinent part that:

[T]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that ... such claim is for unmatured interest....

This statute "establishes a general rule that interest on a debt is collectible from the bankruptcy estate only to the extent it is earned before the filing of the bankruptcy petition." *Gass v. Mid–State Homes, Inc. (In re Gass),* 57 B.R. 109, 112 (Bankr. E.D.Tenn.1985). Payment of postpetition interest on prepetition unsecured claims is prohibited; interest is computed as of the day of the filing of the petition and stops on that date. *See, e.g.,* 4 Collier on Bankruptcy ¶ 502.03[3][a] (15th ed. rev.1997). What constitutes "unmatured" interest is not readily determinable in the case of precomputed loan transactions such as the ones at issue herein where the interest is added to the amount borrowed at the beginning so that the total debt equals the amount borrowed plus interest for the entire term of the loan.

ments. The court does not agree that the portions to which Blazer and City Finance have objected are outside the scope of the joint pretrial statement. While the legal issues as presented by the debtor in his brief are not verbatim as those stated in the joint pretrial statement, the

court's authority to decide this dispute is not restricted to the issues as precisely phrased by the parties in their joint pretrial statement. For these reasons, an order will be entered denying the motion to strike in conjunction with the filing of this memorandum opinion.

Section 502(b)(2) specifies that the unmatured interest must be deducted to compute the net debt as of the date of the bankruptcy filing but does not provide a method or formula for doing so. The legislative history to § 502(b)(2) indicates that:

Paragraph (2) requires disallowance to the extent that the claim is for unmatured interest as of the date of the petition. Whether interest is matured or unmatured on the date of bankruptcy is to be determined without reference to any *ipso facto* or bankruptcy clause in the agreement creating the claim. Interest disallowed under this paragraph includes postpetition interest that is not yet due and payable, and any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy. For example, a claim on a $1,000 note issued the day before bankruptcy would only be allowed to the extent of the cash actually advanced. If the original discount was 10 percent so that the cash advanced was only $900, then notwithstanding the face amount of note, only $900 would be allowed. If $900 was advanced under the note some time before bankruptcy, the interest component of the note would have to be pro-rated and disallowed to the extent it was for interest after the commencement of the case.

Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor. One unarticulated reason for this is that the discounting factor for claims after the commencement of the case is equivalent to contractual interest rate on the claim. Thus, this paragraph does not cause disallowance of claims that have not been discounted to a present value because of the irrebuttable presumption that the discounting rate and the contractual interest rate (even a zero interest rate) are equivalent.

S.REP. No. 95–989, at 62–63 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5848–49. *See also* H.R.REP. No. 95–595, at 352–54 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6308–09.

Blazer and City Finance assert that they have complied with § 502(b)(2) by rebating unmatured interest using the Rule of 78, also known as the "sum-of-the-digits" method. In fact, both creditors contend in the joint pretrial statement that because of their status as Tennessee industrial loan and thrift companies, they are *required* by TENN.CODE ANN. § 45–5–402(b)(2)(A)(i) to use the Rule of 78 to calculate the net balances owed by the debtor. That statute provides in part that "[i]n the event of prepayment in full, by refinancing or otherwise" of a precomputed installment loan in excess of $100.00 with an original term of 61 months or less, the borrower is entitled to a refund or credit of interest, "the amount of which shall be *no less* than the amount computed in accordance with the Rule of 78" (emphasis supplied).[4] The debtor counters that this state law provi-

---

4. TENN.CODE ANN. § 45–5–402(b) provides in part the following:

With respect to loans where the total amount of the loan is one hundred dollars ($100) or more:

. . .

(2) In the event of prepayment in full, by refinancing or otherwise, of such an installment loan:

(A)(i) With respect to a precomputed transaction which has an original term of sixty-one (61) months or less and which is scheduled to be repaid in substantially equal successive installments at approximately equal intervals, the amount required to prepay shall be the outstanding balance as of the applicable scheduled installment date; provided, that the borrower shall be entitled to a refund or credit of interest, the amount of which shall be no less than the amount computed in accordance with the Rule of 78, as follows: the amount of the refund or credit shall be as great a proportion of the total interest originally contracted for as the sum of the periodic time balances of the loan scheduled to follow the applicable scheduled installment date bears to the sum of all the periodic time balances of the loan, both sums to be determined according to the schedule of payments originally contracted for. The applicable scheduled installment date shall be the scheduled installment date next following the actual date of payment, unless payment is made on a scheduled installment date, in which case the date of payment shall be the applicable scheduled installment date.

sion which addresses refund of precomputed interest charges upon prepayment is not applicable for bankruptcy purposes in computing the "payoff" or unpaid balance of a debt as of the date of the filing of the bankruptcy petition because the filing of a bankruptcy case does not equate to a "prepayment in full, by refinancing or otherwise." The debtor asserts that the use of the Rule of 78 is contrary to bankruptcy law and works to the detriment of the debtor, other creditors and the bankruptcy estate because it exacts a penalty for the bankruptcy filing in the form of an accelerated return of interest to the creditor.

■ Contrary to the assertion by Blazer and City Finance, TENN.CODE ANN. § 45–5–402(b)(2)(A)(i) does not mandate the use of the Rule of 78 in rebating unmatured interest. Instead, the statute establishes a minimum rebate to the borrower in the event of an authorized[5] prepayment in full of an installment loan having an original term of five years or less. Thus, while the Tennessee statute clearly authorizes the use of the Rule of 78 under these circumstances, it certainly does not require its use.

■ Even so, some courts have analogized prepayment provisions with the acceleration of debts which occurs upon a bankruptcy filing. See, e.g., In re Clausel, 32 B.R. 805, 810–11 (Bankr.W.D.Tenn.1983). Bankruptcy "operates as the acceleration of the principal amount of all claims against the debtor." In re Hardware, 189 B.R. 273, 279 (Bankr. E.D.N.Y.1995) (citing the legislative history to 11 U.S.C. § 502 at H.R.REP. No. 595, 95th Cong., 1st Sess. 352–54 (1977); S.REP. No.

989, 95th Cong.2d Sess. 62–65 (1978)). Because § 502(b)(2) requires a recalculation of a debt upon a bankruptcy filing to deduct any unmatured interest, these courts have concluded that the calculation should be the same as if the loan were being prepaid under the terms of the loan "since the purpose of the prepayment clause is to determine the amount owed on the loan as of any given day." See Matter of Watson, 32 B.R. 491, 493 (Bankr.W.D.Wis.1983) (Rule of 78 is generally accepted method of computing finance charge rebates, and even though Rule results in less rebate to debtor than actuarial method, difference is slight and does not result in a charge for unmatured interest). See also Meeker v. Bloomington Fed. Savings and Loan Ass'n (In re Hughes), 61 B.R. 400, 403 (Bankr.C.D.Ill.1986) (Rule of 78 proper method for calculating payoff balance of mortgage note upon voluntary prepayment of loan since Rule of 78 allowed by contract and state law); In re Clausel, 32 B.R. at 810–11 (court disallowed contractual penalty for prepayment and imposed noncontractual Rule of 78 to calculate refund of unearned finance charges); Leasing Service Co. v. Eastern Equipment Co. (In re Eastern Equipment Co.), 11 B.R. 732, 740 (Bankr.S.D.W.Va.1981), order vacated upon other grounds, 27 B.R. 980 (S.D.W.Va.1983) (court noted that deduction for unearned interest required by § 502(b)(2) was accomplished by application of Rule of 78 although use of Rule was not at issue).

Case law, however, also supports the debtor's position, with several courts having rejected the Rule of 78 upon the ground that it

5. There is no absolute right under Tennessee law to prepay the loans at issue herein. TENN.CODE ANN. § 47–14–108 which is applicable to loans in general states that "[e]xcept as limited by statutory provisions expressly applicable thereto, the privilege of prepayment of a loan, in whole or in part, and any refunds or premiums with respect thereto, shall be governed by contract between the parties." TENN.CODE ANN. § 45–5–402(b)(1) provides that with respect to any installment loan of $100.00 or more made by an industrial thrift and loan company, the loan "shall be paid in accordance with the schedule of payments provided in the loan contract," unless "the parties to the transaction otherwise agree in writing." However, federal law provides an exception for consumer credit transactions. "If a consumer prepays in full the financed amount under any consumer credit transaction, the creditor shall promptly refund any unearned portion of the interest charge to the consumer." 15 U.S.C. § 1615(a)(1). Paragraph (3) of that subsection makes clear that this obligation applies "with respect to any prepayment of a consumer credit transaction described in paragraph (1) without regard to the manner or the reason for prepayment, including—(A) any prepayment made in connection with the refinancing, consolidation, or restructuring of the transaction; and (B) any prepayment made as a result of the acceleration of the obligation to repay the amount due with respect to the transaction." 15 U.S.C. § 1615(a)(3).

unfairly penalizes the debtor for having exercised the right to file bankruptcy. In *Gass*, the chapter 13 debtors filed suit against their mortgage holder for a determination as to how insurance proceeds should be divided after the debtors' home was destroyed by fire. *In re Gass*, 57 B.R. at 110. The bankruptcy court for this district, speaking through Judge Ralph Kelley, refused to permit the creditor to compute the mortgage payoff using the Rule of 78 notwithstanding that the contract provided that upon prepayment of the mortgage or upon default and acceleration of the debt, the unearned finance charge refund due the borrower would be calculated pursuant to the Rule of 78. *Id.* The court found that neither of these circumstances had occurred, that the fire itself was not a default entitling the creditor to accelerate the debt and that "prepayment" within the meaning of the contract referred to a voluntary prepayment by the debtors, not prepayment brought about as a result of the fire. *Id.* at 112–13. Concluding that the Rule of 78 exacts a penalty on prepayment, the court held that its use would give the creditor "a windfall or impose an uncalled-for penalty on the debtors to the detriment of their other creditors." *Id.* at 113. The *Gass* court cautioned, however, that its holding did not "establish any general rule as to whether the rule of 78's can or cannot be used in calculating the interest earned on a debt before the debtor's filing of a chapter 13 petition." [6] *Id.*

In *General Motors Acceptance Corp. v. Willis (Matter of Willis)*, 6 B.R. 555 (Bankr. N.D.Ill.1980), the court expressly directed that the straight line accounting method rather than the Rule of 78 be used in rebating unmatured interest for purposes of calculating a precomputed interest loan balance, concluding that the Rule of 78 was "slanted unduly in favor of the creditor." *Id.* at 562.

In the *Matter of Bonner*, an unreported decision from the bankruptcy court in the Middle District of Georgia, the court noted that under state law at the time, unearned interest must be rebated by the actuarial method when acceleration of an add-on contract is by the creditor, but that when the contract is voluntarily prepaid or refinanced by the buyer, rebate by the Rule of 78 is allowed. *Matter of Bonner*, 1984 WL 37542 (Bankr. M.D.Ga. Jan. 3, 1984). After reviewing the legislative history to § 502(b)(2), the court held that the creditor must rebate unearned interest according to the actuarial method rather than by the Rule of 78 because the bankruptcy filing caused the acceleration.

> To allow a Rule of 78 rebate in this case would punish Debtor for filing his Chapter 13 petition. Congress, in authorizing Chapter 13, intended that an individual voluntarily adjust his debts from future earnings. This is preferable to liquidation, but it requires effort, and the debtor must be willing to perform under a Chapter 13 plan. Here, Debtor, faced with financial difficulties, chose to file a petition under Chapter 13. Had Debtor defaulted on his obligations, the debt of Ford Motor Credit would have been accelerated and interest would have been rebated using the pro rata method. By filing his Chapter 13 petition, Debtor should not be penalized by receiving a Rule of 78 rebate.

*Id.* at *3. *See also Plaza Savings Ass'n v. Gossage (Matter of Gossage)* 1 B.C.D. 1539, 1541 (Bankr.W.D.Mo.1975) (Under the Bankruptcy Act, the court found "as a conclusion of law that the 'Rule of 78' does not apply in the bankruptcy court in figuring unearned interest, but that a 'pro rata' is the only fair and equitable method to compute same for the benefit of all creditors.").

---

**6.** The *Gass* court noted that if use of the Rule were allowed by contract or state law, it "may be the appropriate method for calculating interest owed at the time of bankruptcy when there has been a prepetition default and acceleration of the debt." *In re Gass*, 57 B.R. at 113. Even in these limited circumstances, however, the court had serious reservations about the use of the Rule:

> (A)llowing an accelerated rate of interest upsets the bankruptcy policy of equitable distribution. Creditors in essentially the same situation would be treated differently according to which ones had declared a default and accelerated their debts before bankruptcy. Furthermore, any increase in a secured claim by increasing the rate of interest above the basic contract rate can reduce the amount available to pay on unsecured claims. [Citations omitted].

*Id.*

This court finds the reasoning of these latter cases persuasive and rejects the conclusion of the courts that have likened acceleration of a debt that occurs upon bankruptcy with prepayment under the terms of a contract or state law. Prepayment and acceleration are not synonymous, but are diametrically opposite. *See Martin v. Commercial Securities Co., Inc.,* 539 F.2d 521, 529 (5th Cir.1976) (Acceleration and prepayment are "conceptually antithetical."), *overruled in part, McDaniel v. Fulton Nat'l Bank of Atlanta,* 571 F.2d 948 (5th Cir.1978) (*en banc*), *reh'g denied,* 576 F.2d 1156, *appeal after remand,* 578 F.2d 1185 (5th Cir.1978). "[A]cceleration, by definition, advances the maturity date of a debt so that payment thereafter is not prepayment but instead is payment made after maturity." *In re Ridgewood Apartments of DeKalb County,* 174 B.R. 712, 721 (Bankr.S.D.Ohio 1994)(quoting *Matter of LHD Realty Corp.,* 726 F.2d 327, 330 (7th Cir.1984) (lender loses right to prepayment premium when it elects to accelerate the debt)); *see also Sound Stage Studios, Inc. v. Life Investors Ins. Co. of Am.,* 1988 WL 138827 at *3 (Tenn.App.1988) (likewise quoting *Matter of LHD Realty Corp.* for same proposition). As stated by Judge Ralph Kelley, albeit in a different context:

> A prepayment clause allows the borrower a deduction of interest if he pays the principal debt before maturity of the note. *Davis v. Hinton,* 519 S.W.2d 776 (Tenn. 1975). That is not the same as making the borrower liable only for the interest that accrues as it accrues.

*Still v. City Bank and Trust Co. (In re DG & Assocs., Inc.),* 11 B.R. 30, 34 (Bankr. E.D.Tenn.1981).

The obvious shortcoming of relying upon a prepayment provision to rebate unmatured interest upon a bankruptcy filing is readily apparent when one considers that the terms of some loans may prevent prepayment entirely or condition the exercise of prepayment upon the payment of an additional, substantial penalty. For example, see *Davis v. Hinton,* 519 S.W.2d 776, 777 (Tenn.1975), which highlights the fact that a creditor cannot be compelled to accept payments on loan before they are due or may condition such prepayment upon payment of interest to date and a bonus.

To this court, the primary reason for not allowing the use of the Rule of 78 to calculate unearned interest is that the Rule does not provide a true measure, but is instead simply an approximation, while although designed to approximate the actuarial rate, favors the lender. *See Lefler v. Kentucky Finance Co., Inc.,* 736 F.2d 375, 379 n. 9 (6th Cir.1984). One bankruptcy court has noted that "it is uncontrovertible that the Rule is an inaccurate measure of the actual rebate to the detriment of borrowers." *Jungkurth v. Eastern Financial Services, Inc. (In re Jungkurth),* 74 B.R. 323, 334 (Bankr.E.D.Pa. 1987). "[T]he 'true' amount of the unearned finance charge can be found only through the use of the actuarial method...." James H. Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions,* 55 B.U.L.Rev. 331 (1975). *See also Lefler,* 736 F.2d at 379 n. 9 ("[T]he actuarial rate ... is the 'pure' method of calculating finance charge refunds."). The court in *Lefler* observed that in 1983 the Internal Revenue Service directed that interest be computed by the actuarial method except for short-term consumer loans, the IRS having concluded that interest computed by the Rule of 78 method "lacks economic substance because it fails to reflect the true cost of borrowing" and "enables an accrual-base taxpayer to deduct more than the economically accrued interest." *Id.* (citing Rev.Rul. 83–84, 1983–1 C.B. 97).[7]

---

7. *Lefler* dealt with an unrelated question of whether a lender's consumer loan agreement provision for the calculation of refunds to the borrower using the Rule of 78 violated the federal Consumer Credit Protection Act, 15 U.S.C. § 1601, *et. seq.,* also known as the Truth–in–Lending Act, and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, promulgated pursuant thereto. *Lefler,* 736 F.2d at 375–76. The court notes that the "Federal Reserve Board has taken the position, adopted by many courts, that the difference between amounts calculated under the Rule of 78's and the actuarial method is not a 'prepayment penalty,'" for disclosure purposes under Regulation Z. *Gantt v. Commonwealth Loan Co.,* 573 F.2d 520, 525 (8th Cir.1978). Whether the difference produced by the Rule of 78 is a prepayment penalty for Regulation Z purposes is not determinative of whether the

That an exact calculation rather than an approximation is required by § 502(b)(2) is apparent from the wording of the statute which directs the court to determine the amount of the claim "as of the date of the filing of the petition." The Rule of 78 method calculates interest on a monthly basis, using the next scheduled monthly installment date following the actual date of payment. *See Lefler,* 736 F.2d at 379. Thus, unless the bankruptcy filing falls on an installment due date, interest accrued using the Rule of 78 method will be a monthly figure, computed through the installment due date following the bankruptcy filing. The actuarial method, on the other hand, utilizes a calculation from the actual date of payment, thus, enabling an exact calculation of the debt as of the date of the bankruptcy filing. *Cf. Lefler,* 736 F.2d at 379 (the fact that Kentucky statute directed that interest refund be computed from the installment period nearest the date of prepayment found by the court to be an indication that Rule of 78 method should be used since it calculates interest on a periodic basis rather than from an actual date of prepayment).

Furthermore, the error produced by the use of the Rule of 78 to calculate the rebate of unmatured interest in precomputed loan transactions prior to the maturity of the note can be viewed as a type of penalty charge since the error always favors the lender. Hunt, 55 B.U.L.REV. at 339.

> A consumer receiving a rebate of the un-earned finance charge computed according to the Rule of 78's always receives less than if the calculation was performed actu-arially. [Citation omitted]. The consum-er, in effect, is paying an additional charge over and above the interest actually earned up to that point.

*Gantt v. Commonwealth Loan Co.,* 573 F.2d 520, 527 (8th Cir.1978) (Heaney, J., concur-ring and dissenting). *See also In re Gass,* 57 B.R. at 113 ("No matter how you look at it the rule of 78's imposes a penalty on prepay-

ment."). The annual percentage rate ("APR") disclosed to a debtor at the inception of a credit transaction is the true or actuarial [8] rate of finance charge if the transaction runs to maturity. Hunt, 55 B.U.L.REV. at 347. The yield to the creditor when the prepayment rebate is calculated by the Rule of 78 is always higher than the stated APR to the debtor. *Id.* The difference between the rebate calculated by the Rule of 78 and that by the actuarial method increases with the duration and interest rate of the loan. *See, e.g., Lefler,* 736 F.2d at 379 n. 9 (citing Hunt, 55 B.U.L.REV. 331). Likewise, the earlier the date of prepayment, the higher the yield to the creditor under the Rule of 78. Hunt, 55 B.U.L.REV. at 348. A brief explanation of the Rule of 78 and its application to the loans in question illustrates the penalty supplied by the Rule's application.

> [T]he Rule of 78's [note omitted] uses a fractional equation to compute the finance charges applicable to any given month of a fixed-period loan. The numerator of the fraction for the first month is the total number of months of the fixed period. The numerator decreases by one with each month elapsed. The denominator is the sum of the numerators throughout the fixed period. For example, for a 12-month loan, the fraction for the first month is 12/78. Twelve is the total number of months, while 78 is 12 + 11 + 10 + 9 ... + 1. (The name "Rule of 78's" refers to the fact that for a 12-month loan the de-nominator will always be 78.)

> A refund of finance charges upon pre-payment of a 12-month loan is calculated under the rule as follows. If prepayment is made after the first month, the creditor will retain 12/78 of the total finance charge. He will retain 12/78 + 11/78, or 23/78 if prepayment is made after the second month; and 12/78 + 11/78 + 10/78, or 33/78, after the third month, and so on....

---

Rule may be used to calculate a net claim upon a bankruptcy filing.

8. "Under the actuarial method, every time a creditor receives a payment, he must first calcu-late the interest due, then deduct the interest

from the payment made, and finally apply the balance of the payment to reduce the outstanding balance of the principal." *Lefler,* 736 F.2d at 379 n. 9.

If the borrower pays off the loan only at the end of the twelfth month, the lender will retain 78/78, or the entire finance charge, as per the parties' initial agreement.

*Lefler*, 736 F.2d at 378–79.

In the Blazer loan transaction dated December 2, 1996,[9] the debtor agreed to pay Blazer 24 monthly payments of $36.00, totaling $864.00, which amount included interest in the sum of $167.84, a service charge of $31.68, installment maintenance fees of $72.00, a life insurance premium of $19.32, a disability insurance premium of $29.14, and a property insurance premium of $31.68. After subtraction of the interest, service charge, maintenance fees and insurance premiums, the loan netted the debtor $512.34 in proceeds. As disclosed in the note, the annual percentage rate for the loan was 39.21%, while the simple interest rate appears to be 24%.[10]

In accounting for its present claim of $545.76 on the loan transaction, Blazer asserts that the gross balance on the date of the debtor's bankruptcy filing was $792.00,[11]

and that it rebated $117.49 of interest, $60.00 of the installment maintenance fees, and $68.75 of the credit insurance premiums. As illustrated in the following table, if unmatured interest were computed by the actuarial method, interest of $37.75 would have accrued during the period between the Blazer loan's inception (December 2, 1996) and the debtor's bankruptcy filing (March 6, 1997), entitling the debtor to a rebate of $130.09 of the precomputed interest of $167.84. However, as shown in Blazer's calculations and the table below, $50.36 in interest accrued under the Rule of 78 producing a rebate of only $117.48,[12] a difference of $12.61 from the actuarial method or an additional 7.5% in interest. Thus, rather than earning 24% interest on the loan as the note provided, Blazer earned interest of 31.5% during the 94 days between the loan's inception on December 2, 1996, and the debtor's bankruptcy filing on March 6, 1997, due to calculation of the rebate by the Rule of 78 method.[13]

**9.** Notwithstanding the representation in the stipulations that "[t]rue and correct copies of the loan documentation" were attached to the joint pretrial statement, the loan documentation attached to the statement is incomplete. With respect to the Blazer loan, only the front side of a promissory note/security agreement dated December 2, 1996, and a "SCHEDULE A/SECURITY LISTING" referenced therein is included, even though the front of the Blazer note recites that the agreement is continued on the back of the document.

**10.** Payments of $33.00 per month over 24 months on a principal loan of $624.16 ($864.00 − $167.84 − $72.00 = $624.16) produces a simple interest rate of 24%. In making this calculation, a monthly payment of $33.00 was utilized rather than the stated $36.00 amount because $3.00 of each payment represents the installment maintenance fee which Blazer may charge pursuant to TENN.CODE ANN. § 45–5–403(5)(C). Total installment maintenance fees as noted above were $72.00 (24 months @ $3.00 per month). The annual percentage rate ("APR") calculates the ratio of the amount financed ($592.48) to the entire finance charge ($271.52) which in this case consists of interest, the service charge and the installment maintenance fees. The simple interest rate, on the other

hand, reflects the ratio between the interest ($167.84) and the principal amount of the loan ($624.16). Cf. 15 U.S.C. § 1606(a)(1) and TENN. CODE ANN. § 45–5–102(15).

**11.** Considering the fact that the amount of the gross balance ($792.00) is equal to the sum of the initial loan amount ($864.00) less two installment payments of $36.00 each, the court surmises that the debtor made the first two requisite installment payments for January and February 1997, and that the third installment payment of $36.00 due as of March 2, 1997, was owing upon the debtor's bankruptcy filing on March 6, 1997. It does not appear that the loan was in default when the bankruptcy case was filed since the note provides for a five-day grace period before a late charge is added and the filing occurred during the grace period.

**12.** In its calculations, Blazer rebated interest of $117.49. The court would surmise that the one cent difference between this amount and the $117.48 computed by the court is due to rounding.

**13.** Even this rate is misleading because it does not take into account the service charge for which there is no rebate and the accrued maintenance fees.

## Blazer Loan

| Month | Balance | Payment | Days | Pro Rata Interest | Days | Rule of 78 Interest |
|-------|---------|---------|------|-------------------|------|---------------------|
| 1 | $624.16 | $33.00 | 30 | $12.48 | 30 | $13.43 (24/300 [14] × $167.84) |
| 2 | $603.64 | $33.00 | 30 | $12.07 | 30 | $12.87 (23/300 × $167.84) |
| 3 | $582.71 | $ 0.00 | 30 | $11.65 | 30 | $12.31 (22/300 × $167.84) |
| 4 | $582.71 | $ 0.00 | 4 | $ 1.55 | 30 | $11.75 (21/300 × $167.84) |
| Totals | | | | $37.75 | | $50.36 |

In the City Finance loan transaction, the debtor borrowed the sum of $2,328.13 on November 20, 1996, which he agreed to repay in 42 monthly installments of $82.00 each, a total of $3,444.00.[15] Finance charges incurred by the debtor in connection with the loan consisted of interest in the amount of $877.31, a service charge of $133.56, and $105.00 in monthly maintenance fees. The stated annual percentage rate for the loan was 23.64%, while the simple interest rate appears to be 18.06%.[16]

City Finance's claim balance calculations attached as *Exhibit D* to the joint pretrial statement reveal that City Finance inexplicably calculated the account payoff as of March 27, 1997, rather than as of March 6, 1997, the date of the debtor's bankruptcy filing. According to these computations, the gross balance of the loan is $3,198.00, which sum indicates that the first three installment payments of $82.00 were made for December 1997, January and February 1998 ($3,444.00 − $246.00 = $3,198.00). After adding a late charge of $3.97,[17] City Finance rebated interest of $683.00 and monthly maintenance fees

of $95.00 to arrive at the claim balance of $2,423.97.

■ As shown in the following table, if the actuarial method of accruing interest had been utilized by City Finance rather than the Rule of 78, interest of $124.96 would have accrued during the period between the loan's inception on November 20, 1996, and the debtor's bankruptcy filing on March 6, 1997, entitling the debtor to a rebate of $752.33 of the interest charges ($877.31 − $124.96 = $752.33) or $69.33 more than the rebate provided by City Finance. This amount, however, does not accurately depict the variation in the two accounting methods. Because City Finance used a prepayment date of March 27, 1997, it incorrectly charged the debtor for an extra month of interest (38÷903 × $877.31 = $36.92; $719.92 − $36.92 = $683.00).[18] If the correct date had been utilized, interest of $157.39 would have accrued under the Rule of 78, resulting in a rebate of $719.92 ($877.31 − $157.39 = $719.92), still $32.43 less than the interest rebated under the actuarial method.

14. The dividend is 300 because the sum of the digits for 24 months is 300 (24 + 23 + 22 + 21 ... + 1 = 300).

15. The City Finance loan documentation which was submitted is even more sparse than the Blazer loan documentation, consisting of what appears to be only a disclosure statement. The statement references a "Loan Agreement and Note" which was not submitted to the court.

16. Payments of $79.50 per month over 42 months on a principal amount of $2,461.69 produces a simple interest rate of 18.06%. Two dollars and fifty cents of each $82.00 monthly payment represents the installment maintenance fee which City Finance was entitled to charge pursuant to Tenn.Code Ann. § 45–5–403(5)(D). Under Tennessee law, the principal amount of the loan "means the total of money paid to, received by, or paid or credited to the account of the borrower...." Tenn.Code Ann. § 45–5–102(13). The principal amount of the City Finance loan consists of the amount financed

($2,328.13) plus the service charge ($133.56), but does not include installment maintenance fees because such fees may not be deducted in advance and can not accrue interest. *See* Tenn. Code Ann. § 45–5–403(5).

17. The statement does not indicate which installment payment by the debtor was late. It would be inappropriate to charge the debtor a late fee for the March installment payment due on March 20 since the payment was not owing when the debtor's bankruptcy case was commenced.

18. Under the Rule of 78, interest is calculated on a monthly basis to the next scheduled installment date following the date of prepayment. *See Lefler*, 736 F.2d at 379; Tenn.Code Ann. § 45–5–402(b)(2)(A)(i). Because City Finance utilized a prepayment date of March 27, the next loan installment date was April 20, which resulted in the debtor being charged with interest through this date even though interest stopped accruing under bankruptcy law when the debtor commenced his bankruptcy case on March 6, 1997.

City Finance Loan

| Month | Balance | Payment | Days | Pro Rata Interest | Days | Rule of 78 Interest |
|-------|---------|---------|------|-------------------|------|---------------------|
| 1 | $2,461.69 | $79.50 | 30 | $ 36.93 | 30 | $40.81 (42/903 [19] × $877.31) |
| 2 | $2,419.12 | $79.50 | 30 | $ 36.29 | 30 | $39.83 (41/903 × $877.31) |
| 3 | $2,375.91 | $79.50 | 30 | $ 35.64 | 30 | $38.86 (40/903 × $877.31) |
| 4 | $2,332.05 | $ 0.00 | 14 | $ 16.10 | 30 | $37.89 (39/903 × $877.31) |
| Totals | | | | $124.96 | | $157.39 |

■ If the loans in question had been paid by the debtor according to their terms over the original life of the loans, the interest rate and the amount of interest paid by the borrower would not have varied regardless of the accounting method used. *See Matter of Willis,* 6 B.R. at 562. The interjection of bankruptcy, however, automatically modified the loan transactions by accelerating the loans to maturity on the date of the bankruptcy filing. As the above tables vividly illustrate, to allow a creditor to calculate its claim by the Rule of 78 would compensate the creditor for a noncontractual acceleration of a loan by generating for the period between the loan's inception and the bankruptcy filing a return of interest greater than that provided under the terms of the loan if the bankruptcy had not occurred. Due to the intervening interests of the estate and the creditors, section 502(b)(2) of the Bankruptcy Code clearly disallows accelerated returns of interest which result solely from the act of filing bankruptcy. If a creditor were to receive the "error" or bonus caused by the Rule of 78 calculations, the dividend received by other creditors would be adversely affected, especially in this instance since this is a "funds available" chapter 13 case. "It would be anomalous for acceleration of an obligation to be construed as a prepayment which triggered the application of a penalty." *In re Ridgewood Apartments of DeKalb County,* 174 B.R. at 720. Prior to the advent of calculators and computers, the inconvenience of calculating a rebate of interest under a precomputed loan transaction using the actuarial method may have provided some justification for use of the Rule of 78. "Today, however, there is no excuse for continuing its use given the prevalence of actuarial tables and calculators." *Gantt,* 573 F.2d at 527 (Heaney, J., concurring and dissenting).

III.

■ In light of the foregoing, the court need not decide the issue presented of whether "the Bankruptcy Code superseded and preempted the application of T.C.A. § 45–5–101 et seq." since the filing of a bankruptcy petition does not constitute a prepayment. The court concludes that because the Rule of 78 is an inaccurate approximation which imposes a payment penalty to the detriment of the debtor, the estate and creditors, its use is inappropriate to calculate the payoff of a debt necessitated under § 502(b)(2) by the act of filing bankruptcy. The foregoing constitutes the court's findings of facts and conclusions of law pursuant to Fed.R.Civ.P. 52(a), as incorporated by Fed.R.Bankr.P. 7052. An order will be entered in accordance with this memorandum sustaining the debtor's objections to the claims of Blazer and City Finance and providing each creditor ten days to file an amended claim which does not include unmatured interest.